DE SANDRO, Respondent, *v.* MISSOULA LIGHT & WATER CO., Appellant.

(No. 3,305.)

(Submitted October 23, 1913. Decided November 20, 1913.)

[136 Pac. 711.]

*Personal Injuries—Master and Servant—Independent Contractors—Pleading and Practice—Burden of Proof—Causal Connection—Assumption of Risk—Safe Place—Evidence—Instructions—Methods of Work—Safety—Verdicts.*

Personal Injuries—Master and Servant—Independent Contractors—Evidence.
   1. •Evidence in an action against a city water company for injuries to a laborer by the caving of a ditch, *held* sufficient to furnish a basis for an inference that plaintiff was at the time of the accident in the employ of defendant company, and not of its codefendant, an alleged independent contractor.

   [As to liability for the negligence of independent contractors, see note in 76 Am. St. Rep. 382. As to who is an independent contractor, see note in Ann. Cas. 1913B, 573.]

**Same—Independent Contractors—Defense—General Denial.**

2. The defense that an independent contractor was responsible for work during the course of which plaintiff sustained injuries is available under a general denial, and need not be established by a preponderance of the evidence, the burden of proving the contrary being on plaintiff.

**Same—Negligence—Causal Connection—Evidence—Insufficiency.**

3. Evidence *held* insufficient to meet the requirement of the rule that before defendant in a personal injury action can be declared liable, plaintiff must have proved not only the injury but also a causal connection between it and defendant's negligence.

**Same—Safe Place—Exception to Rule—Assumption of Risk.**

4. One who enters upon employment, such as mining or the digging of trenches, assumes the risk of the dangers incident to the making of the place which becomes dangerous as the work progresses, or the making of a dangerous place safe; the doctrine imposing upon the master the duty to furnish his servant a safe place in which to work not applying in such cases.

[As to the liability of an employer to an employee who attempts to perform extrahazardous duties, see note in 97 Am. St. Rep. 884.]

**Same—Proximate Cause—Nature of Proof.**

5. Though the proximate or efficient cause of a personal injury may be shown by indirect evidence, it must be of such character that it not only tends affirmatively to show that the accident was due to it, but also to exclude any other theory of its happening.

[As to the doctrine of proximate cause, see note in 36 Am. St. Rep. 807.]

**Same—Independent Contractors—When Question for Jury or Court.**

6. The question whether a written contract which clearly expresses all the undertakings of the parties, or an oral one presenting no controversy as to its terms, created the relation of master and servant, or that of employer and independent contractor, is one for the court; otherwise it is one to be determined by the jury under proper instructions.

**Same—Assumption of Risk—Jury Question.**

7. Whether plaintiff, a laborer engaged in digging a trench, assumed the risk incident to his employment, *held* to have been properly submitted, upon the theory of negligence based on the failure of defendant to make safe the completed portion of the trench.

**Same—Evidence—Technical Error—Effect.**

8. For merely technical error in the admission and exclusion of evidence which did not result in prejudice to appellant, a judgment will not be reversed.

**Same—Independent Contractors—Payment of Wages—Evidence—Cross-examination—Proper Exclusion.**

9. Plaintiff having testified that his wages had been paid through check by one H., alleged by defendant corporation to have been an independent contractor, an objection to the question asked him on cross-examination whether he knew for whom he was working was properly sustained as immaterial, the issue being who was in fact his employer and not his knowledge as to the relation existing between H. and the company.

**Same—Independent Contractors—Evidence—Admissibility.**

10. Plaintiff's evidence that he saw defendant company's foreman on the ditch line the day before the accident, and that the latter had ordered the person in charge to keep the crew at work at a certain point,

was admissible as tending to show how far the company retained control of the work, it being its contention that it was being done by its codefendant, an independent contractor.

Same—Method of Work—Safety—Assumption of Facts—When Proper.

11. While the court in its instructions might have assumed that "shearing" the lips of a trench was a reasonable and proper method of making it safe, in view of the fact that the evidence in this regard was uncontradicted and accorded with common observation and experience, its refusal to do so did not result in prejudice to defendant.

Same—Cities and Towns—Public Service Corporations—Validity of Contracts.

12. *Quaere:* May a water company operating under a franchise from a city, let a contract for the digging and refilling of trenches so as to relieve itself from liability to the contractor's employees for damages on account of injuries sustained because of his negligence in doing the work?

Same—Codefendants—Arbitrary Verdict as to One—Validity.

13. Where, in a personal injury action brought jointly against the employer and his agent or servant, the jury arbitrarily acquits the latter though the wrong complained of was done through his negligence, the verdict against the principal will nevertheless be allowed to stand.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

ACTION by Angelo De Sandro against the Missoula Light & Water Company and another. From a judgment for plaintiff, and from an order denying a new trial, the defendant company appeals. Reversed and remanded.

*Messrs. W. M. Bickford, W. L. Murphy,* and *Harry H. Parsons,* for Appellant, submitted a brief; *Mr. Murphy* argued the caused orally.

The only evidence that in any way tends to show control in anyone other than Hadalin and his foreman was one statement alleged to have been made by Manager Wright to Odenwald, the foreman of Hadalin: "Keep these men here to-morrow; I want this work done." We submit that this might have been a request, an unwarranted direction, or if warranted, went only as a notification to Hadalin, who, the evidence shows, was engaged in performing similar work under contract with other persons, on his own account, that appellant wanted this particular job prosecuted to completion, without interruption or delay. This does not interfere with the independency of the contract; even

the right to put on a sufficient force to complete the work left in the discretion of the owner does not defeat the relationship. The broad question to be determined here is: Had appellant the right to compel Hadalin to protect his workmen by bracing this ditch? The evidence shows that bracing, under the circumstances, where water-pipe had to be laid in the trench, and that the trench was only five and one half feet in depth, was impracticable. But eliminating that question, it is undisputably shown by the contract of 1909, the contract of 1910, reduced to writing in September after the accident, and by the undisputed testimony of Brown, Hadalin, Wright and Odenwald, that no such right to control in that particular existed in the company. (*Morgan* v. *Smith,* 159 Mass. 570, 35 N. E. 101; *Charlock* v. *Freel,* 125 N. Y. 357, 26 N. E. 262; *Rait* v. *New England Furniture etc. Co.,* 66 Minn. 76, 68 N. W. 729; *Roe* v. *Winston,* 86 Minn. 77, 90 N. W. 122.)

The relationship of principal and contractor existing between the company and Hadalin was established by the testimony. The only remaining question on this phase of the case is as to whether or not some peculiar condition nullifies the fact of the relationship. If the nature of the work done by Hadalin under the contract was such that the company must at all events see that the work was done in a certain way, and free from negligence, then, so far as the public, or indeed any stranger is concerned, the independent contract avails the company not at all in an action based on negligence. So, if the work delegated to Hadalin constituted some franchise obligation, privilege or requirement, then the public is not bound to recognize the independent contract. This rule has never been extended by the courts to include the independent contractor himself, or his servants, who, by virtue of their employment, stand in the shoes of their employer, the independent contractor. (See *Bibb's Admr.* v. *Norfolk W. R. Co.,* 87 Va. 711, 14 S. E. 163.) The one case that seems to hold a different view is *Chicago Economic Fuel Gas Co.* v. *Myers,* 168 Ill. 139, 48 N. E. 66, but the statement of the rule there laid down will be found to be but a

loose statement and *obiter dictum*. The court said: "Even though the person who causes the injury is a contractor, he will be regarded as a servant or agent of the corporation for whom he is doing work, if he is exercising some charter privilege or power of such corporation with its assent, which he could not have exercised independent of the charter of such corporation." In support of this proposition three Illinois cases are cited, two of which do not at all support the principle laid down or extend it to the servant of the contractor; and the third is freely criticised in a later Illinois case decided by a court of last resort, as stating a principle of law so loosely as to render it incorrect. *West* v. *St. Louis etc. R. Co.*, 63 Ill. 545, and *Balsley* v. *St. Louis etc. R. Co.*, 119 Ill. 68, 59 Am. Rep. 784, 8 N. E. 859, are founded upon the duty of the railway company toward the public in the exercise of its franchise rights. The third case is that of *Toledo etc. R. Co.* v. *Conroy*, 39 Ill. App. 351. The supreme court of Illinois in *Boyd* v. *Chicago & N. W. R. Co.*, 217 Ill. 332, 108 Am. St. Rep. 253, 75 N. E. 496, said: "Neither of these cases is applicable here, and the general doctrine is not accurately stated in *Toledo etc. R. Co.* v. *Conroy*, 39 Ill. App. 351." That the duty to the general public is widely different from that to a servant of the person doing the work, see *Deming* v. *Terminal Railway of Buffalo*, 169 N. Y. 1, 88 Am. St. Rep. 521, 61 N. E. 983; *Branstrator* v. *Keokuk & W. Ry. Co.*, 108 Iowa, 377, 79 N. W. 130.

It was the duty of Hadalin to so construct the ditch as to allow the pipemen to enter the trench for the purpose of laying and fitting water-pipe. That being Hadalin's duty in the premises and his servant—De Sandro—having been employed to carry out that purpose, and further having nearly twenty years' experience in that line of work and being fully advised of the purpose of the work, he was required under his employment to use what skill he had to accomplish that purpose; and if the nature of the soil required that the sides of the ditch should be "sheared" away near the surface to prevent caving while the pipe was being laid, then it was his duty, he having the required

skill and experience, to use it for the purpose of protecting the ditch until the pipes should have been laid. (*Schmit* v. *Gillen*, 41 App. Div. 302, 58 N. Y. Supp. 458; *Kranz* v. *Long Island Ry. Co.*, 123 N. Y. 1, 20 Am. St. Rep. 716, 25 N. E. 206.)

The jury found against the appellant and expressly found in favor of the codefendant, Hadalin. Having found in favor of defendant Hadalin—since the company acted through him, if it acted at all, in the particular wherein negligence is charged—a verdict in favor of Hadalin required a verdict for the appellant, and hence the court erred in refusing to enter a judgment in its favor. The verdict is self-contradictory and will not support a judgment for the plaintiff. (*Morris* v. *Northwestern Improvement Co.*, 53 Wash. 451, 102 Pac. 402; *McGinnis* v. *Chicago R. I. & P. R. Co.*, 200 Mo. 347, 118 Am. St. Rep. 661, 9 Ann. Cas. 656, 9 L. R. A. (n. s.) 880, 98 S. W. 590; *Hayes* v. *Chicago Tel. Co.*, 218 Ill. 414, 2 L. R. A. (n. s.) 764, 75 N. E. 1003; *Forsell* v. *Pittsburg & M. Copper Co.*, 38 Mont. 403, 100 Pac. 218.)

*Messrs. John H. Tolan* and *R. F. Gaines*, for Respondent, submitted a brief; *Mr. Gaines* argued the cause orally.

It is admitted in this action that the water company was engaged in furnishing water to consumers within the city of Missoula pursuant to franchise authority from the city. This being so, we contend that had the relation of contractor and contractee otherwise been proven to exist, the character of the work and the fact that it was being done pursuant to franchise authority precluded the existence of that relation, because in such instances the right of control of the person doing the work is of necessity and by law not only reserved but imposed upon the grantee of the franchise. Among other privileges given by the franchise in question was that of making excavations in the public streets of the city of Missoula. Without such franchise any person or corporation making excavations in the streets of a city unquestionably would be operating without right and would be committing a nuisance. (*Luce* v. *Holloway*, 156 Cal. 162, 103 Pac. 886.) Within the city of Missoula, then, in opening up the

street—digging ditches therein—Hadalin was of necessity doing an act which could only lawfully be done by reason of the existence of the franchise. In other words, we contend that he was exercising a franchise right of the water company. (See Moll on Independent Contractors and Employer's Liability, secs. 115–127, 148; Thompson on Negligence, secs. 665, 669, 670, 672; *O'Hara* v. *La Clede Gas Light Co.,* 131 Mo. App. 428, 110 S. W. 642; *North Chicago St. R. Co.* v. *Dudgeon,* 184 Ill. 477, 56 N. E. 796; *Solomon R. Co.* v. *Jones,* 30 Kan. 601, 2 Pac. 657.) These cases do not deal with injuries to employees of the person sought to be denominated an independent contractor. But upon principle where can the distinction be? As to the public at large the franchise-holder is liable, because he is in the eyes of the law the person doing the work and is bound to see to its proper performance. It is because he sustains that relation to the work that the public may look to him for compensation; and if he sustains that relation to the work, the employee, who is a third party as much as a traveler upon the streets so far as the contract is concerned, may also look to the franchise-holder for compensation for injuries. This has been squarely announced and applied in the following cases: *Toledo etc. R. Co.* v. *Conroy,* 39 Ill. App. 351; *Philadelphia etc. R. Co.* v. *Hahn* (Pa.), 12 Atl. 480; *Chicago etc. Gas Co.* v. *Myers,* 168 Ill. 139, 48 N. E. 66.

The ownership of a franchise and work done under it *prima facie* makes the owner of the franchise responsible for the conduct of the work. (*Solomon R. Co.* v. *Jones,* 30 Kan. 601, 2 Pac. 657; *Flaherty* v. *Butte Electric R. Co.,* 43 Mont. 141, 115 Pac. 40; *Ringue* v. *Oregon Coal Co.,* 44 Or. 407, 75 Pac. 703; *Rummell* v. *Dilworth,* 111 Pa. 343, 2 Atl. 355; *Corbin* v. *American Mills,* 27 Conn. 274, 71 Am. Dec. 63; Thompson on Negligence, sec. 579; 26 Cyc. 971; 8 Ency. of Evidence, 496, 497.)

On the questions of negligence and assumption of risk, we call attention to the following ditch-digging cases: *Soyer* v. *Great Falls Water Co.,* 15 Mont. 1, 37 Pac. 838; *City of Fort Wayne* v. *Christie,* 156 Ind. 172, 59 N. E. 385; *Bartolomeo* v. *McKnight,* 178 Mass. 242, 59 N. E. 804. The case of *Hennessy* v. *City of*

*Boston,* 161 Mass. 502, 37 N. E. 668, is also a ditch-digging case. It was there said that it was not part of a plaintiff's duty to make an inspection to determine the stability of the soil otherwise than was necessary in the course of the very work he was doing; that aside from that work he could intrust the inspection of the remainder to the employer. This last-named case and also the case of *Coan* v. *Marlborough,* 164 Mass. 206, 41 N. E. 238, are each authority for the statement that the mere fact that a laborer has experience in this line of work does not make the question of assumption of risk one for the court; but that such fact is for the consideration of the jury together with other evidence. (See, also, Labatt on Master and Servant, sec. 98.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The plaintiff recovered a judgment for damages for personal injuries alleged to have been suffered by him during the course of his employment as a servant, by the defendant Missoula Light & Water Company. Adam Hadalin was also made a defendant, but the jury found in his favor. Plaintiff has not appealed, nor did he reserve and incorporate in the record exceptions to any rulings adverse to him during the course of the trial. The Missoula Light & Water Company has appealed from the judgment and an order denying its motion for a new trial. This defendant, hereinafter referred to as "the company," is the owner of a franchise granted by the city of Missoula, whereby it is authorized to lay the mains and pipe-lines in the streets of the city necessary to enable it to distribute water to the inhabitants. The franchise in express terms grants the privilege of making such excavations in the streets and alleys as are required to install the system of mains and pipe-lines and to keep it in repair. It provides that the company shall repair or pay for any damage done by it to property or persons by reason of the construction or maintenance of the system. Under an arrangement between the company and the defendant Hadalin, the latter had undertaken

to do, at a stipulated price per foot, all the digging and refilling of trenches required by the company for the laying of pipe-lines, for the year 1910.  Under this arrangement Hadalin employed his own men, including a foreman, and furnished all the tools and implements necessary to do the work, and agreed to hold the company harmless as against any claim for damages by reason of the doing of the work or any part of it.  At the time of the accident the plaintiff, with others, in all about fifteen men, was engaged, under the direction of one Odenwald, Hadalin's ostensible foreman, in excavating a trench on South Seventh street, in what is designated in the record as No. 2 Daly Addition to the city of Missoula.  The addition had not, at the time, been incorporated in the city, because the owner of it had not complied with the requirements of the statute relating to additions to cities and towns.  (Rev. Codes, secs. 3212, 3213, 3465 *et seq.*) The pipe-line theretofore laid on this street was, by the work in hand, being extended from the city limits into the addition at the expense of the owner.  The place where the accident occurred was therefore not within the city limits, though the street mentioned is an extension of the street of the city having the same designation.  The manner of doing the work was as follows: Each employee was allotted a section of twelve and a half or thirteen feet, which he was expected to complete during the forenoon.  A like amount was allotted to him for the afternoon. In case any one of them had not fully completed his allotment within the time allowed, the others would assist him.  The trench was five and a half feet deep and two feet in width.  The debris was shoveled out upon the surface of the sides of the trench. At noon on the day of the accident the plaintiff had finished the task allotted to him up to that time.  As soon as he had taken his lunch he went to the assistance of another who had not completed his task.  At that point the ditch had been completed to the depth of about four feet.  While the plaintiff was engaged in lowering it to the required depth, the walls for a distance of from fifteen to thirty feet caved in and partially covered him, breaking his left leg below the knee.  From causes which super-

vened thereafter it became necessary for the limb to be amputated above the knee.

It is alleged that the defendants were engaged in excavating ditches in certain streets of the city of Missoula; that they well knew, or in the exercise of ordinary care ought to have known, that the nature of the soil in which the excavation was being made required the walls of the completed portions thereof to be supported by some sort of cribbing or other appropriate means in order to prevent them from crumbling or caving; that the lack of such cribbing or support rendered it unsafe to work in the incomplete portions; that with knowledge of these conditions the defendants wholly failed and neglected to provide any cribbing or support for the walls of the completed portions; that plaintiff did not know of the conditions; and that while he was engaged in his work, the walls of the completed portion crumbled and caved in, causing the walls of the incomplete portion, where the plaintiff was at work, also to crumble and fall upon him, whereby he suffered the injuries complained of.

The defendants filed separate answers; the company, admitting its corporate capacity and plaintiff's injury, denied all the other material allegations of the complaint. Among other matters designated as affirmative defenses, it alleged that at the time the plaintiff was injured he was not in the employment of the company, but was in the employ of its codefendant Hadalin, under an independent contract, by the terms of which the latter had exclusive control of the construction of the trenches required by the company, at a stipulated price per foot for excavation and refilling, and that neither the company nor any of its officers or agents had any right to control, or was responsible for, any act or omission of said Hadalin. The defendants also relied upon the special defenses of contributory negligence and assumption of risk. There was issue by reply.

The brief of counsel for the company contains thirty-five assignments of error, to most of which they have devoted attention in their argument. Many of them are wholly without merit. We shall give special notice to such of them only as will serve

to guide the court on another trial, which must be ordered on the ground of insufficiency of the evidence to sustain the verdict.

1. The sufficiency of the evidence to make a case for the jury was challenged during the trial, both by motion for nonsuit and by request for a directed verdict. The principal contention [1] now made is that the evidence introduced by the plaintiff fails to show *prima facie* that, at the time of his injury, he was in the employment of the company, and that, if it be conceded that he was employed by the company and that the latter was guilty of negligence in failing to support the walls of the completed portions of the trench by any suitable means, the evidence wholly fails to show a causal connection between this dereliction of duty and the plaintiff's injury.

The plaintiff was the only witness who testified in his behalf as to the character of the work, the purpose for which it was being done, the surrounding circumstances, and how and by whom he was paid his wages. When his case was closed .no contract had been shown between Hadalin and the company. On the other hand, it appeared that the trench was being excavated for the company for the laying of a pipe-line which was to be part of its system, and that it was engaged, with another crew of men, in laying pipe therein as fast as it was completed. It was shown that the plaintiff's wages were being paid by Hadalin, but Hadalin's relations to the company were not shown, except that he was directing the work as it progressed. One seeing how and for what purposes the operations were being conducted, and knowing, as he must, that corporations can act only through agents, would naturally infer that the whole enterprise was that of the defendant company. These circumstances, we think, furnish a sufficient basis for an inference, in the absence of countervailing evidence or circumstances in themselves explanatory of the situation, that all the men engaged were the employees of the company. It was said by Chief Justice Cockburn, in *Welfare* v. *London & Brighton Ry. Co.*, L. R. 4 Q. B. 693: "I agree that where a thing is being done upon the premises of an individual or a company in the ordinary course of business,

it would fairly be presumed that the thing was being done by a person in the employment of the principal for whose benefit the thing was being done.'' To the same effect are the remarks of Justice Clopton, in *Rome & Decatur R. R. Co.* v. *Chasteen,* 88 Ala. 591, 7 South. 94: ''As no contract was produced or proved, which was in the power of the defendant, evidence that the engine and cars belonged to the company, and that the road was being constructed for its benefit, if believed, *prima facie* shows that those employed in the work of construction were the agents and servants of the company, and devolves on it the burden to prove that the road, engine, and cars were in the possession and under the control of Callahan as a contractor, and that those employed were exclusively his agents and servants. As an inference may be reasonably drawn that the company retained the right to direct what should be done, and how—the general mode of performance—though Callahan may have employed and paid the workmen, the sufficiency of the undisputed facts mentioned to overcome the presumption arising from ownership was a question for the jury, on consideration of all the circumstances proved.'' The decisions recognizing the doctrine stated above are not numerous, but the following are more or less directly in point: *McCamus* v. *Citizens' Gaslight Co.,* 40 Barb. (N. Y.) 380; *Redstrake* v. *Swayze,* 52 N. J. L. 129, 18 Atl. 697; *Dillon* v. *Hunt,* 82 Mo. 150; *Perry* v. *Ford,* 17 Mo. App. 212. See, also, Moll on Independent Contractors, *etc.,* sec. 32, and note to *Richmond* v. *Sitterding,* 65 L. R. A. 445, at page 459.

Of course, it was indispensable for the plaintiff to show his employment in the first instance. Without a *prima facie* showing of the relation established by it, he could not recover. Having the affirmative of the issue, the burden was upon him to produce evidence to support it, and as to this issue the burden was upon him throughout. (Rev. Codes, sec. 7972.) But under the doctrine of the cases cited *supra,* the circumstances disclosed by plaintiff's own testimony were sufficient to call for the production of evidence to rebut the presumption thus raised against the company. In a given case the circumstances developed by

plaintiff's witnesses may be such as to furnish no basis for an inference in his favor. As was pointed out by Chief Justice Cockburn, in *Welfare* v. *London & Brighton Ry. Co., supra,* the character of the work done may be such as to rebut any presumption that the person doing it is in the employ of the defendant or is its agent. Under this condition of the evidence the plaintiff has not made a *prima facie* case calling for the opinion of the jury, but must produce other evidence to avoid a nonsuit. The defendant is responsible upon the principle of the maxim *"Qui facit per alium facit per se"*; and if at the end of plaintiff's case there has not been made out a *prima facie* case of employment by the defendant, or at the end of the whole case it has not been disclosed by a preponderance of the evidence that the defendant is the master—the responsible principal—the plaintiff cannot recover.

The defense that the person responsible for the work is an independent contractor is not affirmative in its nature. At common law it was available under a plea of not guilty. **[2]** (*Greenwalt* v. *Horner,* 6 Serg. & R. (Pa.) 71; *Hall* v. *Snowhill,* 14 N. J. L. 551; *Plowman* v. *Foster,* 6 Cold. (Tenn.) 52; *Bidd's Admr.* v. *Norfolk & W. R. Co.,* 87 Va. 711, 14 S. E. 163.) Under the Code it is equally available under a general denial, because evidence tending to show that a person other than the defendant is the responsible principal—the master—not only tends to negative the fact of employment by the defendant, but also that the negligence causing the injury was his. So far as we know, no court has announced the rule that the defense must be established by a preponderance of the evidence. If the plaintiff's case as made at the close of his evidence calls for the opinion of the jury, the defendant must thereupon proceed with his evidence in rebuttal, but he is never required to assume any greater burden; and if at the close of the whole case it appears that the work was being done by an independent contractor, or the evidence on this point stands at an equipoise, he is entitled to a verdict. Just here it may be remarked that the trial court adopted the view that the burden was upon the company to estab-

lish this defense by a preponderance of the evidence. This was clearly error.

While we think the evidence sufficient to show *prima facie* an employment by the company and a dereliction of duty in the failure to provide against the caving of the walls of the com- [3, 4] pleted portion of the trench, we also think it wholly fails to show, directly or inferentially, any causal connection between this dereliction and the injury suffered by the plaintiff. Under the allegations of the complaint, the failure to crib or support the walls of the completed portion caused the walls of the incomplete portion to crumble and cave. It is the duty of the master to exercise ordinary diligence to furnish his servant with a reasonably safe place in which to work. He cannot delegate this duty to another so as to avoid being held responsible for any negligence in that behalf. This rule, however, does not apply when the servant is employed in making a dangerous place safe, or when the making of the place is an incident of the work in which he is engaged and the danger arises from the work as it progresses. This is true particularly of mining and other industries which from their nature require service in dangerous places, as well as in the making of them. The master, if a corporation, must necessarily employ someone to do this work. The necessities of the case, therefore, require the servant, when he enters upon such an employment, to assume the risk of such dangers as are incident to it. (*Thurman* v. *Pittsburg & Mont. Copper Co.*, 41 Mont. 141, 108 Pac. 588; Labatt on Master and Servant, 2d ed., sec. 1177.)

The plaintiff is a foreigner. He speaks broken English, and some of his statements are somewhat quaint. The following excerpts from his evidence will be sufficient to show that it wholly fails to support the allegations in the complaint: "I came back this end and helped this man here; and my bank started to cave in and reached me and buried me up. While I was working in this ditch in the afternoon, I was turned east and the cave-in came from the west. I was digging and shoveling both in the afternoon; digging I believe and shoveling is the same thing. I

was working on the west side when I was through there, and went to help another man when I was hurt. The dirt came on me just about here. After the dirt buried me I did not lose consciousness. I started to yell; another man came and dug me out. I said something a while ago about the ditch caving starting at the west. I saw that afterward; after they dug me up. The time they took me up they left me there; then I turned back and saw it was caven on the west side of me; it was about from thirty to thirty-five feet west. * * * The first man west of me was about thirty or thirty-five feet. When the dirt covered me up it did not cover my head and the upper part of my body; I looked back west at the same time the cave struck me. They dug me up, and I could not myself, and I turned back, and they helped me, took me out while I was looking back, too. I turned round and looked back and saw the ditch just as the cave struck me and saw the cave-in. It was caving in, sliding, falling. Back of me at the time I turned around I saw the ditch falling in. At that time the ditch was falling in about thirty or thirty-five feet. I did not see, could not see, it fall; it was fallen already. I did not see it fall; I just saw what buried me. I did not see the cave fall at all. I felt that it was falling. I do not know where that cave started back of me. It started with a piece of work I was through in the morning. I know that because I saw it after; saw it after it was caved in. Q. It was all fallen down when you saw it? A. That end of it faced me; I didn't was looking around. As to whether or not it caved both ways, I did not see it. I saw when it reached me; it buried me up. All I know is when I looked at it the ground was caved in there for thirty or thirty-five feet. I know it started back of me. I was not looking back at the time it was caving. I do not know where it started.'' This evidence was not aided by the testimony of any other witness.

The witness Hadalin said: ''When I went there in the afternoon about twelve or fifteen feet in length of the bank had fallen into the ditch on the north side of the ditch. * * * When I got back there in the afternoon I found that twelve or thirteen

feet had caved in.   Mr. Odenwald and I measured it; I do not exactly remember the number of feet, but it was only a short distance, twelve or fifteen feet to the best of my knowledge.'' Odenwald testified: ''The cave-in of the ditch on the north bank was about twelve or fifteen feet, and on the south bank not quite that much, I don't think.''

Marino Scandello, a fellow-workman of plaintiff, testified: ''I noticed how far along the ditch the cave-in extended; it was about fifteen feet.   De Sandro was in the center of this cave, and the ground was caved on both sides of where De Sandro was.   I was there before De Sandro was liberated and taken out of the ditch.''

The utmost that this evidence tends to show is that the plaintiff was caught and injured by the caving of the walls at the place in which he was working.   Whether he himself caused the fall of the material by a stroke of his pick at that place, or whether because of the nature of the ground, disturbed as it was by his work, it began to cave there and extended to the completed portion, or whether it began in the completed portion, and the fall there carried with it the walls at the point where the plaintiff was at work, are questions left entirely to speculation. If the nature of the soil at that place was such that the plaintiff's operations were likely to cause it to fall, this was a catastrophe which he was bound to foresee and guard against; for it is conceded that cribbing could not have been put in at that place until that portion of the trench had been completed.   It is not sufficient that the plaintiff prove the injury.   It is necessary that he go further and show by some substantial evidence the causal connection between the negligence of the defendant and the injury; for the master cannot be held liable if his negligence was merely a condition, as opposed to the efficient cause of the injury.   (Labatt on Master and Servant, 2d ed., sec. 1570; *Monson v. La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.)   The efficient cause may be shown by indirect evidence, but it cannot be said to be established by such evidence unless the circumstances are such that they not only tend

affirmatively to show it, but also tend to exclude any other. (*Monson* v. *La France Copper Co., supra; McGowan* v. *Nelson,* 36 Mont. 67, 92 Pac. 40; *Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515.)

The further contention is made that the evidence as a whole demonstrates that the plaintiff was employed by Hadalin as an independent contractor, and hence that the court should have directed a verdict for the company. During the years 1909 and 1910 the company was apparently engaged in reconstructing and extending its system. It had entered into a written contract for the year 1909 with Hadalin & Campbell, as copartners, under the terms of which the latter agreed to dig and refill all trenches required for the work during the year, at a stipulated price per foot. The contract had been executed to the satisfaction of the company. For the year 1910 it contracted exclusively with Hadalin. This contract the evidence tended to show was to be reduced to writing, but that this was not done because Mr. Brown, the manager of the company, was too busy to attend to it. In September, after the accident had happened, this was done. Except the price per foot stipulated for, the writing expressed substantially the stipulations and conditions contained in the one entered into the year before, though there was some discrepancy in the statements of Brown and Hadalin on the subject. Both testified, however, that it contained the terms and stipulations which had been agreed upon by them at the time. The writing was dated back to April 1, the time at which Hadalin actually began work. Under its terms Hadalin agreed to do all the excavation and refilling of trenches required by the company during the year 1910, to supply his own tools and other means of doing the work, to complete the work from time to time, and at points indicated by the company, in a workmanlike manner, subject to the approval of the foreman of the company, and to save the company harmless against any claim for damages caused by him. The company on its part was to pay Hadalin from time to time on estimates of the amount of work done. This evidence tends further to show that from April until **the**

contract was reduced to writing, periodical settlements were made between Hadalin and the company, based upon estimates at the price per foot named in the contract, the company paying a lump sum for the amount due, and that Hadalin employed and paid all the men who did the excavation work.

It is insisted by counsel that this evidence stands uncontroverted by any evidence in the record, and hence that the court erred in submitting to the jury the question whether Hadalin was [6] an independent contractor. With this contention we do not agree. But for the fact that the parties prepared and signed the writing in September, the question whether there was or was not a contract would have been left entirely to rest upon parol evidence. The preparation of the writing at that time did not change the situation so far as it covered the time prior to the accident. In the absence of the writing it would have been the exclusive province of the jury to say whether there was or was not a contract; for whether there was or not depended upon the truth of the statements of Brown and Hadalin in that behalf, in the light of the surrounding circumstances. There was some evidence that Wright, the general foreman of the company, was present and gave some orders to Odenwald touching the completion of the particular work on which Hadalin was engaged on the day before the accident. This was a circumstance to be considered by the jury in connection with the other evidence as to how far the company retained control of the work. The mode pursued for periodical settlements between Hadalin and the company tended to corroborate Hadalin and Brown as to the terms of the contract, but this did not so conclusively establish the fact of its existence that the court was warranted in taking the case from the jury. The production of the writing did not aid the defendant's case; on the contrary, the fact that it was executed after the accident, and dated back to cover the time of its occurrence, might be suggestive of fabrication in order to save the company from liability. This was also a circumstance to be considered by the jury; for the question of good or bad faith of the transaction thus was made a matter of inquiry to be determined

by the jury. When such a contract is in writing and clearly expresses all the undertakings of the parties, the relation it creates between them is to be determined exclusively by the court. (*Good* v. *Johnson*, 38 Colo. 440, 8 L. R. A. (n. s.) 896, 88 Pac. 439; Moll on Independent Contractors, *etc.*, sec. 32; *Linnehan* v. *Rollins*, 137 Mass. 123, 50 Am. Rep. 287; *Mayhew* v. *Sullivan Min. Co.*, 76 Me. 100.) So, too, when, though verbal, there is no controversy or uncertainty in the evidence as to the terms of the contract and there is room for only one inference, it is to be construed by the court. (*Drennen* v. *Smith*, 115 Ala. 396, 22 South. 442; Moll on Independent Contractors, *etc.*, sec. 29.) When, however, as in this case, the contract is not in writing, and the evidence is not entirely clear as to its terms, and different deductions may be drawn from it, especially so when a question of good faith is at issue, the relations of the parties are to be determined by the jury under proper instructions. (*Rome & D. R. Co* v. *Chasteen*, 88 Ala. 591, 7 South. 94; *Carlson* v. *Stocking*, 91 Wis. 432, 65 N. W. 58; *Daley* v. *Boston etc. R. R. Co.*, 147 Mass. 101, 16 N. E. 690. See, also, note to *Richmond* v. *Sitterding*, cited *supra*, 65 L. R. A. 508.)

The contention is also made that the court should have directed a verdict on the ground that the danger incident to the employment was shown by the evidence to have been obvious and fully [7] understood by the plaintiff. On the theory that the injury was caused by a cave-in in the completed portion of the trench, which would not have occurred if precaution had been taken to make safe the completed portion, we think the question whether plaintiff assumed the risk of danger from this source was properly submitted to the jury.

2. We have examined the several assignments upon the rulings of the court in admitting and excluding evidence. Some of them [8] were objectionable from a technical point of view, yet we do not think the company suffered prejudice by reason of any of them. Others of which complaint is made were correct. To illustrate: The ordinance granting the franchise which the company acquired by assignment from the original grantee was ad-

mitted in evidence without preliminary proof that it is one of the ordinances of the city. That the franchise was granted by this ordinance is admitted in the answer. While it was not relevant to any issue involved, its admission could not have wrought any prejudice.

It appeared from the testimony of plaintiff that he had been [9] paid his wages by Hadalin by check, and that he had signed the pay-roll kept by Hadalin. On cross-examination he was asked whether after he received the checks signed by Hadalin, he knew for whom he was working. An objection to the question was sustained on the ground that it was not proper cross-examination, and that it called for the conclusion of the witness. We think it was wholly immaterial whether the plaintiff knew for whom he was working, the real inquiry being who in fact was his employer. Though he knew that Hadalin paid him, he could not be expected to know the relations of Hadalin to the company. Again, this witness was permitted, over objection, to state [10] that he saw Mr. Wright, the foreman of the company, on the line of trench the day prior to that on which the accident occurred, and that the latter had ordered Odenwald, the foreman in charge, to keep the crew at work at that place the following day. The evidence was competent as reflecting upon the relations of the parties, and as tending to show how far the company retained control of the work being superintended by Odenwald.

3. The instructions submitted to the jury are criticised in many particulars, the chief complaint being made of those wherein the court declared that the company must, in order to avoid liability, show by a preponderance of the evidence that the plaintiff was employed by Hadalin as an independent contractor. Though the contract was pleaded as a special defense, counsel by specific objection and exceptions to the instructions on the subject sufficiently reserved the question as to who should sustain the burden of proof. What has already been said in discussing the evidence is sufficient to dispose of these assignments. It is sufficient also to dispose of the assignments upon the question whether the court should have instructed the jury to find for the defendants.

There was evidence tending to show that the nature of the soil in which the excavation was being made was such that cribbing or other suitable support was necessary to prevent the walls of the completed portions from caving.   There was also evidence tending to show that caving could have been prevented as well by "shearing" off the lips of the trench or digging it wider at the top, thus removing a portion of the superincumbent weight, and that a short time prior to the accident special instructions had been given by Hadalin to all the men working on the trench to do this.   These instructions, the witness stated, were given because on a preceding day a cave-in had occurred, slightly injuring one of the men.   The plaintiff denied that he had been so instructed.

[11]   Counsel requested the court to instruct the jury that shearing was a reasonable and proper method to protect the workmen, and that if they found that special instructions had been given to the plaintiff to pursue this method, but that he had failed to do so, and that the accident was the result, they should find for the defendants.   The court modified this instruction so as to submit also the question whether or not the method was reasonable and proper.   Contention is made that the court erred in modifying the request.   The evidence tending to show that the method called "shearing" was proper and safe was not contradicted or impeached in any way; indeed, that it would have furnished ample protection to anyone working in the trench is manifest. Of course, it was a question for the jury whether Hadalin had given instructions to the men, as he and other witnesses stated. Since the evidence as to the propriety and safety of the method was not contradicted, but was entirely in accord with the experience and common observation of men, the court might well have assumed it true and given the instructions as framed by counsel. We do not think, however, that prejudice was wrought by the modification.

The question whether the company, operating as it does under [12]   a franchise from the city, could let a contract to Hadalin for the digging and refilling of the trenches, so as to relieve itself from liability to Hadalin's employees for damages

for injuries caused by his negligence, was raised during the course of the trial.  The court held that such a contract is valid, as is manifest from the fact that it permitted the jury to find whether there was a contract or not.  Counsel for plaintiff, so far as the record shows, did not make objection to any instruction and reserve exception, under the provisions of the Code (Rev. Codes, sec. 7118), to the action of the court in that behalf, so as to require this court to review it.  In their briefs counsel have devoted a great deal of space to a discussion of the validity of such a contract, and also to the question whether it was invalid so far as any of the work to be done under it was without the city limits.  Since the court held in favor of the company as to the validity of the contract, it has no right to complain.

Plaintiff cannot complain because counsel did not reserve the the question, as required by the statute.  Under these circumstances we must accept the opinion of the trial court as to the law of the case for the purpose of these appeals, and decline to undertake a determination of the question involved.  A discussion of it at this time would be purely academic, and any conclusion arrived at with reference to it would be *obiter*.  The same would be true as to a discussion and decision of the question whether, though the contract, so far as it included work done within the city, was invalid, it was valid as to work done without the city limits; for if the contract was valid, it applied to any work which might be done under it within or without the city.

4. It is insisted that since the jury found in favor of Hadalin, [13] who had general charge of the work, thus acquitting him of negligence, the company was entitled to a judgment notwithstanding the verdict against it.  The question presented by this contention has practically been foreclosed by this court by the decisions in *Verlinda* v. *Stone & Webster Eng. Corp.*, 44 Mont. 223, 119 Pac. 573, and *Melzner* v. *Raven Copper Co.*, 47 Mont. 351, 132 Pac. 552.  It is true that the verdict in each of these cases was silent as to the servant who was made codefendant with the master, while here it is in favor of the servant.

But we think the formal acquittal of the servant or agent through whose wrong the injury was done should not deprive the plaintiff of what the jury has given him, if the evidence shows that he has suffered wrong. As was said in *Verlinda* v. *Stone & Webster Eng. Corp., supra:* "The conclusions reached by jurors are sometimes inexplicable. Often they arbitrarily find against one party and in favor of another without any apparent reason; but, if the evidence justifies the verdict as to the party held, there is no reason why it should not be deemed good as to him, notwithstanding there is no finding as to the other. It seems to us that the better rule is that, if the evidence is such that the jury might have found against both the master and the servant, the plaintiff should not be denied his recovery against the master because the jury were unable to agree upon a verdict against the servant, or arbitrarily disregarded the evidence tending to show negligence on the part of the servant." There are cases which adhere to the rule which counsel invoke. *Doremus* v. *Root,* 23 Wash. 710, 54 L. R. A. 649, 63 Pac. 572, *Morris* v. *Northwestern Improvement Co.,* 53 Wash. 451, 102 Pac. 402, and *Hayes* v. *Chicago Telephone Co.,* 218 Ill. 414, 2 L. R. A. (n. s.) 764, 75 N E. 1003, are in point. We prefer, however, as indicated by the decision in *Verlinda* v. *Stone & Webster Eng. Corp., supra,* to follow the doctrine announced by other courts: That where the jury arbitrarily acquits the servant or agent through whose negligence the wrong was done, the verdict against the principal ought to be allowed to stand; the reason being that the plaintiff should not be concluded by the capricious conduct of the jury. (*Illinois Central R. Co.* v. *Murphy's Admr.,* 123 Ky. 787, 11 L. R. A. (n. s.) 352, 97 S. W. 729; *Gulf etc. Ry. Co.* v. *James,* 73 Tex. 12, 15 Am. St. Rep. 743, 10 S. W. 744; *Texas & P. Ry. Co.* v. *Huber* (Tex. Civ. App.), 95 S. W. 568.) This doctrine may not be strictly logical, but it is equally as logical as that announced in the cases cited; for under the rule followed by them, the plaintiff is deprived of his right of recovery on purely technical grounds. But aside from this consideration, for aught that we can gather from the record, the jury in

this case did not arbitrarily or capriciously acquit Hadalin. Upon the theory that the work was being done by the company through Odenwald and Hadalin, both being its servants, the jury may have concluded that since Odenwald had direct, personal supervision, it was his duty, and not that of Hadalin, to take precautions for the safety of the employees, and that the company should be held because of his failure to perform the duty delegated to him. From this point of view, Hadalin was an intermediate agent, and ought not to have been held liable for Odenwald's dereliction.

The judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.