MULLICH, Appellant, v. BROCKER, Respondent.

St. Louis Court of Appeals, November 28, 1905.

1. INDEPENDENT CONTRACTOR: Agency. Where a boy sixteen years of age, who had no regular vocation, made an agreement with the owner of a horse to break the horse for a specific sum and took the horse under his control for the purpose, he was not, as a matter of law, an independent contractor, but whether he was such was a question for the jury.

2. ——: ——: Negligence. He had no particular experience in breaking horses and whether the owner of the horse was guilty of negligence in making a contract with him so as to render the owner liable for an accident to a third person caused by the boy in driving the horse, was likewise a jury question.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED.

*Wm. L. Bohnenkamp* for appellant.

The demurrer to the evidence should have been overruled. (a) The evidence of plaintiff's witnesses showed conclusively that young Schoenborn was a mere servant of the defendant, and not an independent contractor. O'Neill v. Blase, 94 Mo. App. 648, 68 S. W. 764; Waters v. Fuel Co., 52 Minn. 474, 38 Am. St. Rep. 564; Holmes v. Railway, 49 La. Ann. 1465; Sadler v. Henlock, 4 El. and Bl. 570; Morgan v. Bowman, 22 Mo. 549. (b) Even if it could be said that the boy in question was an independent contractor, the defendant is responsible in this case, because the horse in question was unruly and was of a vicious and mischievous disposition. One who puts such an animal as this horse in charge of an employee, to be conducted along the public streets of a city, cannot avoid or evade responsibility by investing the employee with the character of an independent contractor.

*Fred. Wislizenus* for respondent.

Plaintiff's damage, if any, was sustained while defendant's horse was in the control of an independent contractor. Fink v. Furnace Co., 82 Mo. 276; Morgan v. Bowman, 22 Mo. 538; Hilsdorf v. St. Louis, 45 Mo. 98; Clark v. Railroad, 36 Mo. 218; Barry v. St. Louis, 17

Mo. 121; Gayle v. Car & Foundry Co., 177 Mo. 446, 76 S. W. 987; Long v. Moon, 107 Mo. 334, 17 S. W. 810; Crenshaw v. Ullman, 113 Mo. 639, 20 S. W. 1077; Burns v. McDonald, 57 Mo. App. 601; Weise v. Remme, 140 Mo. 289, 41 S. W. 797.

GOODE, J.—This case originated before a justice of the peace, was appealed to the circuit court and there went off on a demurrer to the evidence introduced by the plaintiff. The purpose of the action was to obtain damages for an injury to two horses belonging to plaintiff, which injury is alleged to have been due to defendant's negligence. One of the horses was killed in the accident and the other one hurt. It appears that while a servant of the plaintiff was driving a two-horse team along one of the principal streets of St. Louis, a horse belonging to the defendant, hitched to a two-wheeled gig or sulky, and driven by a lad sixteen years old, ran into plaintiff's team with such force that one of the shafts of the sulky pierced the breast of one of plaintiff's horses, from which injury that horse died. The other horse of plaintiff's team was hurt, but not fatally.

The testimony goes to show the defendant owned a small horse or pony, weighing seven or eight hundred pounds, which he desired to have broken so it could be driven. A man named Zeiss, who knew of defendant's wish to have some one break the horse, suggested to Frank Schoenborn that he (Schoenborn) might get the job. Zeiss recommended Schoenborn to Brocker as a suitable person to do the work. Schoenborn and Zeiss called at Mr. Brocker's residence and the former proposed to Brocker to break the horse. Schoenborn swore not much talk on the subject passed at that time, but Brocker said he would let him (Schoenborn) know about the employment next morning. As we gather from the evidence, though it is somewhat obscure on the point, after this conversation, Schoenborn and Zeiss

went to the latter's house and from there Schoenborn
went to his father's saloon and there found Brocker in
conversation with his father.    When Brocker stepped
out of the saloon, Schoenborn again took up the subject
of being employed to break the horse, asking $10 for the
work, but finally making a bargain with Brocker to do
it for $6.   Brocker told the boy to come for the horse
the next morning; which he did and  took  it to his
father's home; where, it appears, there was a consider-
able lot or enclosed park.   Schoenborn first drove the
horse around the lot in harness and afterwards hitched
it to a two-wheeled sulky and drove about the lot in
that vehicle.   Later in the day he drove about the
streets of the city with the horse hitched to a gig; and
while driving, the horse got beyond his control, ran into
plaintiff's team and injured it as stated.   Schoenborn
said that Brocker did not ask him much about his ex-
perience in breaking horses, but did ask him if he had
ever driven before.   He replied that he had.   Brocker
also asked him if he had ever broken a horse to harness
and Schoenborn said he had broken a horse once but
that it was not a wild horse; that it was already partly
broken; that he did not tell Brocker he had broken a
great many horses, but told him he had broken two and
knew all about horses.   He said he understood German,
but did not undestand it very well as spoken by Brocker
and for that reason did not talk very much with him;
that he was to break the horse so Brocker could drive
it; that he did this in two days and then took Brocker
for a drive and the latter was satisfied.   Schoenborn
said the agreement was that he was to take the horse
back to Brocker's stable every night.   The horse is
spoken of in the testimony as a small horse, a pony and
a bronco.   It was shown that while driving it along the
street it was unruly and mischievous.   Such is the sub-
stance of the testimony to which a demurrer was sus-
tained.

The statement of the petition filed before the justice of the peace contains two paragraphs, in one of which the charge is that while plaintiff's two-horse wagon was being driven along one of the streets of St. Louis, defendant, through his servant and agent in charge of his horse and wagon, so negligently, carelessly and unskillfully managed, controlled and drove defendant's wagon that the wagon and horse were caused and suffered by said servant of defendant to run against plaintiff's team, thereby injuring both horses, as stated. The other paragraph of the statement charges that the defendant negligently engaged a youth of about sixteen years of age to drive his horse; when he knew, or by the exercise of ordinary care, could have known that said youth was too young, inexperienced and incompetent to drive said horse, which had not been driven often before, if at all; and that the driver so negligently employed by defendant, on account of youth, inexperience and incompetency, drove defendant's horse negligently and collided with plaintiff's team.

The ruling of the court below in sustaining the demurrer, is supported on the ground that the boy Schoenborn was an independent contractor for whose negligence the defendant was not responsible. The proposition that he was shown conclusively to be an independent contractor is contested by the plaintiff; and we think is not sound, according to the criterion in vogue in this State for determining whether, in a given instance, the relation of independent contractor and employer, or master and servant existed betwen two parties, one of whom was doing a service for the other. Schoenborn was not proved to follow the vocation of breaking horses. Perhaps he did; but there was scarcely enough evidence of the fact adduced at the trial to justify a finding by the jury that he had an independent occupation of that character. It appears that he had partly broken a horse or two; but whether for his

father, as any boy might, or under employment for others, was not shown. When a person is an independ-ent contractor and when merely a servant, are questions that have engaged the attention of the appellate tribunals of this State frequently; and yet we should hesitate to say that any test of universal application has been prescribed. Among others these cases may be consulted on the subject. [Barry v. St. Louis, 17 Mo. 121; Morgan v. Bowman, 22 Mo. 538; Hilsdorf v. St. Louis, 45 Mo. 98; Fink v. Furnace Co., 82 Mo. 276; O'Neil v. Blase, 94 Mo. App. 648.] In the recent case of Gayle v. Foundry Co., 177 Mo. 427, 446, the Supreme Court approved the following rule, taken from the work of Judge THOMPSON on Negligence. (2 Vol. p. 899):

"The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his sub-contractor, or his servants, committed in the prosecution of such work. An independent contractor is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished." [Gayle v. Foundry Co., 177 Mo. l. c. 446.]

In the same opinion the definition of Shearman & Redfield on Negligence was approved. It reads as follows:

"Although, in a general sense, every person who enters into a contract may be called a 'contractor,' yet that word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do a certain piece of work for other persons, using his own

119 App.—22

means and methods, without submitting himself to their control in respect of all its details. The true test of a 'contractor' would seem to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the *result* of his work, and not as to the means by which it is accomplished." [Vol. 1, sec. 164.]

Judge COOLEY says:

"The term contractor is applicable to all persons following a regular, independent employment, in the course of which they offer their services to the public to accept orders and execute commissions for all who may employ them in a certain line of duty, using their own means for the purpose and being accountable only for final performance." [Cooley, Torts (2 Ed.), top p. 647.]

Wharton approves the following statement of the rule by Judge SHARSWOOD in Painter v. Mayor of Pittsburg, 46 Pa. St. 213:

"It may be considered as now settled that if a person employs others, not as servants, but as mechanics or contractors in an independent business, and they are of good character, if there was no want of due care in choosing them, he incurs no liability for injuries resulting to others from their negligence or want of skill." [Wharton, Negligence, sec. 181.]

Now, without attempting to lay down a general rule for ascertaining when the law will treat a person doing work as a contractor, and when the relationship of master and servant will be enforced, we think it apparent that the court below was in error in holding as a conclusion of law that Schoenborn was an independent contractor for this reason: so far as appears he had no regular vocation, and hired to the defendant as the result of soliciting casual employment. We find no countenance for the proposition that a person not especially qualified for a particular service, but ready to undertake any job which may be offered to him that he thinks

himself able to perform, becomes, when hired for some job, an independent contractor, simply because the employer relinquishes control over the work and trusts to the employee's discretion. It looks like the employee must have a calling in which it is fair to presume he has developed skill, before he will be regarded otherwise than as a servant. We do not say he must have a trade or profession — be a skilled mechanic, doctor, or lawyer; but he must hold himself out as having an occupation with which he is familiar. In Fink v. Furnace Co., supra, the man who was held to exercise an independent calling and for whose acts the defendant company was not answerable, had a contract with the company to deliver sand to the furnace at so much a load. The facts of the present case are quite similar to those in O'Neill v. Blase, supra.

But a proprietor will not be exonerated from liability for negligence in the doing of work which he lets out to an independent contractor unless he used care to select a competent person as contractor — one who not only had an occupation, but reasonable skill in performing the tasks pertaining to it. If a person entrusts the performance of work, of a kind likely to result in harm to third persons unless cautiously and skillfully done, to a manifestly unfit person, as an independent contractor, the employer will be responsible for the consequences of such contractor's incompetency. Breaking horses to harness is not necessarily dangerous to others, if properly done; and in selecting a contractor to do work of that character, a proprietor need only use ordinary care to choose a competent person. But if he is careless in selecting, he remains liable. [Dillon v. Hunt, 82 Mo. 150, 155; Brannock v. Elmore, 114 Mo. 55, 62, 21 S. W. 451; Burns v. McDonald, 57 Mo. App. 599.] It follows that if Brocker carelessly selected an incompetent person to break the horse, he was liable for an injury resulting from his contractor's negligence.

Therefore, in the present case, it must be determined whether there was evidence conducing to show the breaking of the horse required skill and caution in order to prevent harm resulting to some one, and whether Brocker was careless in selecting Schoenborn to break him. We think there was testimony to show the horse was likely to do mischief. It stands undisputed that he needed breaking to harness and that Brocker was afraid to drive him until he was broken. There is little, if any, proof that Schoenborn possessed especial skill in the breaking and control of horses. The inference is fairly deducible from the testimony that a youth, with as little experience in such work as he had, was not a fit person, either in respect of judgment, prudence or skill, to break an unruly horse. It is inferable, also, that he was rash in driving about a chief thoroughfare of a large city on the first day the horse was hitched to a vehicle. It is further inferable that if Schoenborn had had more strength, judgment and skill in the management of horses, the defendant's horse would not have gotten beyond control, as Schoenborn swore he did. Likely a grown man could have held the horse and prevented him from running into plaintiff's team. Brocker appears to have made but little inquiry in regard to Schoenborn's qualifications before employing him, and the evidence as to his use of ordinary care in selecting a person to break the horse permits the conclusion that he did not. It was for the jury to say. But counsel for the defendant insists that the plaintiff had no right to go to the jury on the issue of whether he let the contract to break the horse to an unskillful person, because the gravamen of the complaint is that Schoenborn was defendant's servant and defendant is responsible for his servant's negligence. We have already shown that though the petition counts on that cause of action, it likewise counts on defendant's negligence in hiring Schoenborn. The case was instituted in a magistrate's

court, where less formality of pleading is required than in a court of record; but in point of fact, the statement sufficiently alleges a cause of action based on both kinds of negligence, to have been good had the case been instituted in the circuit court. Moreover, the two grounds of recovery are stated in separate paragraphs; but it would not have been objectionable after verdict, if they had been in one. [O'Neill v. Blase, 94 Mo. App. 648, 68 S. W. 764.]

The judgment is reversed and the cause remanded. All concur.