HENRY BAKER, Appellant, v. SCOTT COUNTY MILLING COMPANY.— 20 S. W. (2d) 494.

Division Two, October 9, 1929.

1090

1092

*John P. Griffin* for appellant.

*Bailey & Bailey* and *Anderson, Gilbert & Wolfort* for respondent.

COOLEY, C.—Plaintiff sued the defendant corporation in the Circuit Court of the City of St. Louis to recover for personal injuries sustained while working in the wrecking of an elevator of defendant at Sikeston, Missouri. The jury returned a verdict for defendant, and from the judgment thereon plaintiff appealed.

Defendant had on its premises two steel elevators or grain tanks, generally referred to in the evidence as elevators, which it desired to have taken down, and to that end engaged one Otis Bryant, who employed plaintiff and two other laborers to assist with the work. There is sharp contention as to Bryant's relationship to the defendant company, defendant contending that he was an independent contractor for whose negligence, if any, defendant is not liable; plaintiff, contra. This issue will necessitate somewhat minute notice of the evidence.

The elevator which was being wrecked at the time of plaintiff's injury (the other structure being similar) is described as being a large one, forty or fifty feet high and about forty feet "across" (apparently circular), built of steel with wooden partitions dividing it into eight compartments, and resting upon a flat steel-covered rock foundation. At the bottom earth had been packed in, sloping in all directions from the bottom at the center to a height of about eight feet at the outer edge, upon which had been laid concrete four to six inches in thickness, making the bottom of the elevator "funnel shaped" or "hopper shaped," so that grain would "run to the center."

At the time of plaintiff's injury, May 12, 1924, the elevator he was working on had been razed to the dirt and concrete portion at the bottom; that is, the steel and lumber had been taken down and he and his fellow-workmen were engaged at the time of his injury in taking out the dirt and its concrete covering, under the direction of Bryant, who was also helping with the work. Two compartments had been worked out, and they had been busy for a short time on the third. Plaintiff had not helped with work on the other two. The

method of procedure apparently was to begin at the outside, remove the dirt from under the concrete—"undermine" the concrete—for a short distance, perhaps two feet or so, and then break off the concrete with a pick or a sledge. The dirt was packed too hard to remove with a shovel, and a pick was used to loosen it, that is, pick it down to the intended depth and to a height of about four feet, then go to the top and tap the concrete with a sledge, thereby jarring and loosening the dirt to the depth it had been undermined, causing the undermined dirt to fall, and then break off the overhanging concrete. There is no evidence whether or not dirt had fallen after being thus undermined without tapping on the concrete prior to the fall that injured plaintiff.

Plaintiff's injury came about in this wise. Bryant had undermined with the pick to a depth of about one and a half to two feet and then stepped back and said: "All right, go ahead," which meant for plaintiff, using a shovel, and the other laborers, to shovel out the loosened dirt. The shovels had short handles so that it was necessary in removing the loose dirt to get quite close to, though not directly under, the overhanging dirt and concrete. As plaintiff was stooping over, getting a shovelful of dirt, he was caught and severely injured by the sudden and unheralded fall of the overhanging dirt and concrete. Some two wagon-loads of dirt, and a slab of concrete about two feet long, a foot to eighteen inches wide and four to six inches thick, fell, the slab falling upon and breaking his leg, and the dirt covering him so that he had to be dug out. There was evidence that the slab of concrete was cracked off from the main body of concrete for some time before it fell—"had an old crack in it." Only the loose piece of concrete fell.

Plaintiff was employed as a laborer and was paid by Bryant, as were his co-workers. Payments to him were made weekly in cash. Bryant was tearing down one of the elevators when he employed plaintiff. One W. C. Bowman was president of defendant company, and Joseph Bowman was superintendent of defendant's mill. Mr. Hahn was defendant's millwright. Plaintiff testified:

"After I went to work, I was directed by Mr. W. C. Bowman; the president gave orders occasionally. Mr. Bowman is in court. He would tell us where to put the stuff as we took it down, keep certain materials in separate piles, take the nuts and taps and pile them in one pile and pile the iron that came down from the elevator at a certain place, and the concrete at a separate place and the lumber too. He was around there practically every day, on an average of every other day. When he was not there Joe Bowman sometimes gave orders. He is in court. His office was right across the way, he could see what was going on at all times. I judge the office was

not over a hundred yards away. It was on the mill premises. He was foreman, or superintendent of that mill. Q. What directions did he give you as to the doing of the work? A. Sometimes they would come with lumber and he would give me directions to give this fellow's lumber or see that he got the lumber. Of course, he did not talk to me so much, because I was working on top most of the time, but he would give orders to the other fellows.''

Plaintiff further testified that when Bowman was not there to boss the job, Otis Bryant did the bossing. That Bryant was "foreman when nobody else was there, but when Mr. Bowman gave orders we disregarded his orders and did what Mr. Bowman said." On cross-examination he testified: "Q. Now, Mr. Bowman also told you to keep the dirt and concrete separate? A. Yes." He proceeded: "That is all the instructions he gave me. He was not there the day I was hurt. Mr. Bowman did not give me any instructions about moving the dirt that day. Otis Bryant told me to do it."

He also said that the orders given him by W. C. Bowman and Joseph Bowman were given at different times; that the tools used in the work of wrecking were obtained from defendant's mill, brought to the work by Mr. Hahn, and that he knew the rope and chain block used belonged to defendant because Hahn brought them out, but did not know personally whether Hahn owned the tools and appliances or whether they belonged to the company. Hahn did not testify.

Witness Singleton, for plaintiff, corroborated plaintiff as to the source from which the tools and appliances came, the presence of the Bowmans about the work and the giving of directions from time to time, and the character thereof, by W. C. Bowman and Joseph Bowman. On the latter point this question was asked and answer given on direct examination: "Q. As to the digging of the dirt and the moving of it, who had been giving you directions as to it? A. Mr. Bowman." Immediately following this the witness says that Bryant had been giving directions; that Bryant used the pick and did not have any one direct him as to when and how to use it. On cross-examination he said that Bryant was telling them how to dig the dirt, and that neither of the Bowmans had told witness how to dig under there, nor anything about climbing up and breaking the concrete.

Defendant, after unsuccessfully demurring to plaintiff's evidence, introduced in evidence a written contract which it claimed it had made with Bryant and which is as follows:

"CONTRACT.

"This agreement entered into on this 26th day of March, 1924, by and between Otis Bryant, party of the first part, and the Scott

County Milling Company, a corporation, party of the second part, for the consideration of the sum of $600, do hereby acknowledge the following, to-wit:

"Party of the first part agrees to tear down two steel tanks, situated on the Scott County Milling Company property, located and known as Mill A, in the west part of Sikeston.

"Said party of the first part agrees to cut steel rivets and remove the steel in sheets, and lower the steel from the said tanks, stack it up in a workmanlike manner, and also to tear down partitions plank by plank, and remove all nails therefrom, stacking up different dimension lumber in separate piles.

"Party of the first part agrees to use due care in tearing down these tanks, and that lumber and steel is not damaged more than absolutely necessary in tearing down the aforementioned tanks.

"Party of the first part is to tear down tanks to foundation. Party of the second part is to remove bridge and spouts from above the tanks.

"Party of the second part agrees to advance a portion in cash, as work progresses, at their discretion, but at no time to exceed seventy-five per cent (75%) of the labor done.

"All materials are to be stacked on the ground near where the tanks are located.

"Executed in duplicate this 26th day of March, 1924.

"WILLIAM OTIS BRYANT, Party of the First Part.

"THE SCOTT COUNTY MILLING COMPANY, Party of the Second Part. By W. C. BOWMAN, Pres."

Bryant was not called as a witness, nor had his deposition been taken.

W. C. Bowman, defendant's president, testified that he had no recollection of ever speaking to Bryant in reference to the work after making the contract; wouldn't say that he did not do so, that he might have said something to him in reference to placing the material after it was taken down; did not watch the progress of the work in particular. He admitted that he had seen Bryant once since the suit was filed, but had made no effort to take Bryant's deposition or procure his testimony; he supposed Bryant lived at Sikeston, and had been told by Bryant's father where Bryant was, but did not take the address.

Joseph Bowman testified that he had nothing to do with giving orders relative to wrecking the tank or to the removal of the dirt. He saw Bryant cracking the concrete with a sledge, but had nothing to do with it. Neither of the Bowmans remembered letting Bryant have any tools. Joseph said the tools mentioned were used, but he did not know whose they were.

There was evidence tending to prove, and it was practically conceded, that Bryant had no occupation other than as a common laborer, had no prior experience in wrecking buildings or structures such as the one in question, or any work of that nature, and had never previously undertaken work of any kind as a contractor. W. C. Bowman said he had known Bryant for several years prior to employing him; that he was a good man, but a laborer who worked by the day; that Bryant had done some general laboring work around the mill a year or so previously.

Bryant did not finish the work, but none of defendant's officers seemed to know why he did not do so or by whom it was finished. The officers, when first asked about that, could not even tell whether Bryant had in fact completed the job or not, and only remembered the fact, when reference to defendant's books showed the payments made to Bryant, who had been paid by check, approximately once a week as the work progressed.

Plaintiff's petition, *inter alia,* alleges that he was employed as a laborer (by whom is not stated) to wreck or take down defendant's elevator, and that it was defendant's duty to furnish him a reasonably safe place in which to work, and that it was necessary to remove the dirt and concrete mentioned (describing it), and that while he was shoveling dirt out of the bottom of the elevator under the orders and directions of the defendant, its officers and agents, the dirt and concrete fell upon and injured him, and alleges certain specifications of negligence. Defendant's answer was a general denial, except for the admission that defendant is a corporation.

Plaintiff assigns error in the giving of an instruction for defendant, the refusal of two and the modification of another requested by him, and in the admission of certain evidence.

I. It is necessary to consider first defendant's contention that the case should not have been submitted to the jury. At the close of the evidence defendant asked an instruction in the nature of a general demurrer which the court refused. Defendant insists here that it should have been given on two grounds, first, that no negligence was shown and plaintiff therefore made no case of liability on the part of any one, and second, that the evidence shows that Bryant was an independent contractor, for whose negligence, if any, defendant is not liable. It is not claimed that plaintiff was guilty of contributory negligence or that he assumed the risk.

We think that upon the facts shown plaintiff made a submissible case on the issue of negligence. The dirt had been undercut or "undermined" to a depth of some eighteen inches and to a height of

about four feet, leaving a mass of earth three or four feet in height and eighteen inches thick with no support except its adhesion to the earth behind it. In addition to its own weight there was resting upon it the weight, or part of the weight, of the slab of concrete which the evidence tends to show had been cracked off from the main body of concrete. Plaintiff, a young man of twenty-four, was not shown to have had any experience in work of the character then being performed. It is true, as respondent asserts, that no witness testified that an inspection would have revealed the crack in the concrete. But a witness did testify that from looking at it after the slab had fallen the crack was ''an old crack.'' If the edge of the slab where it was broken off had been exposed to the elements sufficiently to make it look old, it is, to say the least, highly probable that an inspection would have revealed the crack. And had there been no crack in the concrete there was the overhanging mass of earth with no support beneath it and nothing to prevent its falling except, as above stated, its adhesion to the mass behind it. From the facts and circumstances shown the jury might find that no inspection was made and no precautions taken to prevent a possible fall of the overhanging earth, near and almost under which plaintiff was directed to work. The employer is required to exercise ordinary care to furnish to his employee a reasonably safe working place and must take such precautions for the safety of his employees as ordinarily prudent men would take in like circumstances. The duty is a continuing one. It was a question for the jury whether or not the duty was discharged in this instance.

The employer was held liable under a similar state of facts in Barnard v. Brick & Coal Co., 189 Mo. App. 417, 176 S. W. 1108. See also, Littig v. Urbauer-Atwood Heating Co., 292 Mo. 226, 237 S. W. 779.

II. The question of whether, as to plaintiff, Bryant was the servant or agent of defendant or an independent contractor presents a more difficult problem. Where the facts are undisputed the court may declare as a matter of law that one is or is not an independent contractor. But if the facts and legitimate inferences to be drawn therefrom are in dispute, the question is one for the jury. In Mullich v. Brocker, 119 Mo. App. 332, 97 S. W. 549, GOODE, J., speaking for the court, said: ''When a person is an independent contractor and when merely a servant, are questions that have engaged the attention of the appellate tribunals of this State frequently; and yet we should hesitate to say that any test of universal application has been prescribed. . . . In the recent case of Gayle v. Foundry Co., 177 Mo. 427, 446, the Supreme Court approved the following rule, taken from the work of Judge THOMPSON on Negligence (vol. 2, p. 899):

" 'The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work not in itself unlawful or attended with danger to others, according to the contractor's own methods and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his sub-contractor, or his servants, committed in the prosecution of the work. An independent contractor is one who renders service in the course of an occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished.' "

Similar statements of the rule are quoted from other recognized authorities. The definition quoted from Thompson on Negligence has often been quoted with approval by this court.

In 39 Corpus Juris, Section 1517, page 1315, it is said: "Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results. All these matters are to be taken into consideration in determining whether or not a party is an independent contractor."

The same authority states (Sec. 1518, p. 1316) that the right of control as to the mode of doing the work is generally held to be the principal consideration in determining the relationship, citing in support of the text several Missouri cases. But "retention of the right to supervise as to results, as distinguished from the right to supervise as to the means by which the intermediate results should be obtained, does not affect the relationship." [39 C. J. 1321, sec. 1521.] See also Lawson v. Railway, 110 Mo. 234. That one is paid by the piece or by the job does not constitute him an independent contractor, though it is a circumstance to be considered in determining whether he is such. [O'Neill v. Blase, 94 Mo. App. 648, 68 S. W. 764; 39 C. J. secs. 1322, 1523; 14 R. C. L. 74, sec. 11.] Nor is the power to employ and discharge employees in the performance of the work alone sufficient to create the relationship of independent contractor so as to absolve the owner from liability. [39 C. J. 1323, sec. 1526, and sec. 1518, p. 1317.]

In this case, the defendant introduced a written contract it had made with Bryant for the work in question. We apprehend it can make no difference, so far as this question is concerned, whether the

contract is oral or written, provided its terms as conclusively appear in one case as in the other. The contract on its face might be construed to vest in Bryant complete control of the means and manner of doing the work, though it does not expressly so provide. But if it is conceded that under the contract Bryant could have insisted on doing the work in any way he chose, still we think that if the parties understood and acted upon the contract as leaving the right to direct the method of doing the work in defendant, the fact that the contract might have been construed to deprive defendant of that right cannot now be asserted by it as conclusive against the plaintiff. And we are of the opinion that under all the circumstances shown the inference may be drawn that they did so act, and therefore the actual relationship must be determined from all the facts and circumstances in evidence.

- Bryant was totally inexperienced in the character of work called for by the contract. He was not, and never had been, engaged in that or any other kind of contracting and seemingly had no regular employment. Certainly he could not be said to have been engaged in an occupation of the character involved. In Mullich v. Brocker, supra, that fact, under similar circumstances, seems to be stressed and in that connection the court quotes the definition of independent contractor from 1 Thompson on Negligence, sec. 164, and also quotes the following from Cooley on Torts (2 Ed.) 647:

"The term contractor is applicable to all persons following a regular independent employment, in the course of which they offer their services to the public to accept orders and execute commissions for all who may employ them in a certain line of duty, using their own means for the purpose, and being accountable only for final performance." [See also 14 R. C. L. 76, sec. 12.]

The Mullich case is cited approvingly and extensively quoted from in Thomassen v. West St. Louis Water & Light Co., 312 Mo. 150, 278 S. W. 979, and cited with approval in Semper v. American Press Co., 273 S. W. 186. Another circumstance that may be considered in determining whether defendant and Bryant intended and understood that control of methods was to be left to Bryant, is that no bond or guaranty of any kind was required of him. Bryant could not have possessed any financial means; being a day laborer with perhaps, as the evidence indicates, some aspirations to fame and fortune in the pugilistic world; the fame restricted to his immediate locality and the fortune among the things hoped for but as yet unseen. He did not even have the appliances with which to do the work. Defendant wanted the elevators razed in such manner as to save as much of the value of the materials as possible. Would it have entrusted the wrecking of those large structures to an inex-

perienced and financially irresponsible man and with no guaranty of efficient performance without an understanding that it had the right to direct the work? Bryant did not complete the job but that fact made so little impression on the minds of defendant's officers that none of them could remember why he quit or by whom the work was finished, and did not even recall the fact that he had not completed it until the books were consulted to ascertain the amounts and times of payments to him. If he was working as a laborer his quitting would doubtless have caused but little concern; if as a contractor, it would seem that his breach of contract would have been noticed more.

Taking into consideration all the facts and circumstances revealed by the evidence, together with the testimony of plaintiff and his witness as to the directions given and apparent control exercised by defendant's president and superintendent, we think it was a question for the jury whether the actual relationship existing between defendant and Bryant was that of owner and independent contractor or that of master and servant. If the latter, the fact that defendant's *officers* were not present at the time of the injury and did not personally direct plaintiff to do the act he was doing when injured would be immaterial.

III.   There is another principle that must be considered in determining the question of non-liability on the ground that Bryant was an independent contractor.

"According to the weight of authority the duty rests on the employer to select a skilled and competent contractor, and the employer is in general liable to third persons for the negligent or wrongful acts of an independent contractor employed by him . . . where the employer was negligent in failing to exercise reasonable care in the selection of a competent contractor." [39 C. J. 1339, sec. 1550, citing Mullich v. Brocker, supra, among other cases.]

The Mullich case recognizes and applies that doctrine.   In Salmon v. Kansas City, 241 Mo. 14, 145 S. W. 16, the doctrine is recognized so far as it is held to apply to third parties, but the majority opinion (the court being divided) holds that the employer owes no duty to the servant of the independent contractor to provide him a competent and skillful employer, citing with approval Schip v. Pabst Brewing Co., 64 Minn. 22. In a strong dissenting opinion by BOND, C., concurred in by three of the judges, the opposite view is taken, it being argued that in order to meet the requirements of the law as generally defined one must, in order to *be* an independent contractor, possess reasonable skill and qualifications

for the work in hand, without which he is not in reality a contractor, but only in legal effect a servant; and that an owner, having knowledge of such deficiency, cannot supply it by mere agreement and thereby make him in law what he is not in fact.

The reasoning by which the conclusion announced in the majority opinion in the Salmon case was reached seems to be disapproved in the unanimous opinion of this court en banc in Mallory v. Louisiana Pure Ice & Supply Co., 320 Mo. 95, 6 S. W. (2d) 617. In the Salmon case the plaintiff was an employee of an independent contractor, who claimed in his petition, among other things, that the work was intrinsically dangerous and that an incompetent contractor had been employed and that for both reasons defendant was not exempt from liability. The court discusses at length the question of intrinsic danger and reaches the conclusion that the defendant would not be liable to plaintiff, an employee of the contractor, even conceding that the work was intrinsically dangerous. Then follows, at page 45, the statement that *"for reasons above given,* a charge of incompetency would not help plaintiff. The city owes no duty to the servant of the contractor to provide him a competent and skillful employer.'' [Italics ours.] Now, in the Mallory case, the court again had under consideration the question whether the owner might be held liable to an employee of his independent contractor on account of intrinsic danger in the work required to be done. The Salmon case is discussed at length and the court then says at page 117:

''The position of the servant of a contractor is treated at length, and forcefully, in the dissenting opinion in the Salmon case, and the Missouri cases, including Horner v. Nicholson, 56 Mo. 220, are reviewed. In the dissenting opinion, l. c. 65 (145 S. W. 32), it is said:

'' 'The legal principle upon which the liability of the owner depends is, that he shall not directly nor indirectly put his property to such use as probably to injure others, without at the same time assuming responsibility for such injuries in so far as they are caused by his own negligence or the negligence of his substitute in the work. This creates a non-delegable duty.'

''The view therein was also expressed that the contention that an owner might be liable to the public, but not to the servants of the contractor, was without support either in reason or authority.

''There is no contractual relation between the owner and the servant of the independent contractor; and, under that view, such servant so far as the principal employer is entitled to his remedial rights on the same footing as others.'' [320 Mo. 117, 6 S. W. (2d) 626.]

The court concludes its discussion of the Salmon case thus:

''Under all the circumstances of this case, we are not willing to follow and apply the broad rule stated in the Salmon case, which

would inflexibly exclude the plaintiff upon the single ground that he was the servant of the contractor."

Since the ruling in the Salmon case relative to non-liability of the owner to the contractor's employee, where he employs an incompetent contractor, was based upon the same reasons as the ruling relative to non-liability where the work is intrinsically dangerous, the decision in the Mallory case in disapproving the reasoning upon which the ruling on both points in the Salmon case was based, in effect overrules that case on the former point as well as upon the latter.

One of the reasons stated in 39 Corpus Juris (Sec. 1531, p. 1327) for the doctrine of non-liability of an employer for the acts or omissions of an independent contractor is that the employer has a right to rely on the presumption that the contractor will discharge his legal duties owing to his employees and third persons. He could not rely on such presumption if he had knowingly selected an incompetent contractor or had exercised no care to select a competent one. Under the facts shown in this case the plaintiff was entitled to have that issue submitted to the jury. We think the demurrer to the evidence was properly overruled.

IV. Appellant assigns error in the giving of defendant's Instruction No. 5, which reads as follows:

"The court instructs you that if Bryant, acting as a reasonably prudent man, thought it safe to pick under the concrete and then have the dirt shoveled out, the plaintiff cannot recover."

This was the only instruction given for defendant and it directed a verdict for defendant solely on the hypothesis that Bryant thought it safe to do the work in the manner in which it was being done. Bryant did not testify and the jurors were left to conjecture as to what he thought or to deduce his thoughts from the fact that he gave the order. It is on the latter theory that respondent attempts to justify the instruction. Respondent contends that the instruction is merely the converse of plaintiff's instruction numbered 1, in which the jurors were told that in order for plaintiff to recover they must find that the pile of dirt and concrete was likely to fall and that such danger was known or in the exercise of ordinary care should have been known to defendant; and that since Bryant admittedly gave the order to plaintiff to shovel out the dirt, plaintiff's right to recover is necessarily bottomed on Bryant's negligent order. And respondent says that Bryant's action discloses conclusively what he thought, because "in human experience it is inconceivable that Bryant would have ordered the appellant into a position he knew or thought was dangerous."

We are not prepared to say that courts will take judicial notice that men will never expose others to risk of injury from danger they know or think may exist. Men do knowingly assume risks to themselves, and it is not inconceivable that they may expose others to risks of injury from dangers they know or think may lurk but hope may not eventuate. Moreover, no matter how prudent a man Bryant may be, what he thought about the safety of the then existing situation was not the full measure of defendant's duty. Bryant's opinion would necessarily be limited by his experience and capacity to draw correct conclusions from facts within his knowledge, as well as by his information of what the actual conditions were. Bryant was inexperienced in that kind of work. There may have been facts not known to him and therefore not considered by him at the time of giving the order, but which an ordinarily prudent master in the exercise of reasonable care for his servant's safety should have known. For instance, he may not have known and probably did not know of the crack in the concrete. The jury should have been permitted to determine under a proper instruction from all the facts and circumstances in the case, whether or not the defendant was negligent. The instruction was not even definite as to whether it applied to the particular time and circumstances when the order was given or generally to the method adopted-for removing the dirt. The giving of that instruction was reversible error.

V. Since the case may be tried again we shall notice briefly other assignments of error. Appellant complains of the court's action in modifying his instruction numbered 2. The modifications consisted of interpolations, which we show by italicizing the words inserted by the court. The instruction as modified and given was as follows:

"The court instructs the jury that the defendant denies that plaintiff was employed by it, but *claims that plaintiff* was employed by Otis Bryant, and that said Otis Bryant was an independent contractor. The court instructs the jury that 'an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own method, and without being subject to the control of his employer, except as to the result of the work.' The jury is instructed that even though you find and believe from the evidence that the defendant employed Otis Bryant to do the work mentioned in the evidence, *as an independent contractor*, it was the duty of the defendant *to use ordinary care* to employ a person who was *reasonably* competent and had acquired ordinary skill in doing that kind of work before the defendant would be relieved of the duty, and that it would owe to the plaintiff to ex-

ercise ordinary care to furnish him a reasonably safe place to work, and if you find and believe from the evidence that the said Otis Bryant was *such independent contractor* and not a *reasonably* competent person and had not acquired *ordinary* skill doing the work mentioned in the evidence, *and that defendant did not use ordinary care in employing said Bryant,* then the defendant cannot excuse itself of the duty to exercise ordinary care to furnish the plaintiff a reasonably safe place to work; and if you, the jury, find and believe from the evidence that the plaintiff was working at the place mentioned in the evidence, then you will consider the breach of duty, if any, of the defendant to the plaintiff, as submitted to you in the other instructions.''

Appellant's complaint is that the instruction as given only required that defendant *use ordinary care* to select a *reasonably* competent contractor in order to be exonerated from liability if Bryant was in fact an independent contractor. As to the first objection, we think the instruction correctly declared the law. The master himself is not required absolutely to furnish safe working conditions to employees, but only to use ordinary care in that regard. Perfection cannot be demanded or expected. Again quoting from 39 Corpus Juris, Section 1530, page 1324: ''The general rule deducible from the decisions and the one now universally recognized is that, where the relation of independent contractor exists, and due diligence has been exercised in selecting a competent contractor . . . the contractee is not liable.'' The same principle is recognized in Mullich v. Brocker, 119 Mo. App. 332, where at page 339 Judge GOODE says:

''But a proprietor will not be exonerated from liability for negligence in the doing of work which he lets out to an independent contractor unless he used care to select a competent person as contractor —one who not only had an occupation, but reasonable skill in performing the tasks pertaining to it . . . Breaking horses to harness is not necessarily dangerous to others, if properly done; and in selecting a contractor to do work of that character, a proprietor need only use ordinary care to choose a competent person. But if he is careless in selecting, he remains liable.'' [Citing cases.]

The instruction would have been better had it omitted the word ''reasonably'' modifying ''competent,'' but the word ''reasonably'' as thus used only made the instruction mean in substance what it meant without that word, since as submitted by plaintiff it coupled with the word ''competent'' the words ''and had acquired ordinary skill in doing that kind of work,'' thus making the possession of ordinary skill the test of competency. Appellant has no just complaint in the giving of the instruction as modified.

VI. Error is also assigned in the admission in evidence of defendant's ledger sheets and check stubs showing defendant's payments to Bryant. The evidence showed that Bryant had been paid by check but the checks themselves had been destroyed. The evidence was offered, and we think properly admitted, as tending to support defendant's contention that Bryant was an independent contractor.

VII. Appellant assigns error in the court's action in giving of his own motion the instruction on burden of proof. The first paragraph of the instruction tells the jury that the burden of proof is on the plaintiff to establish by the preponderance or greater weight of the evidence the facts necessary to a verdict in his favor under these instructions. The second paragraph is substantially a replica of the instruction defining burden of proof and preponderance of the evidence, as given in Brown v. American Car Foundry Co. (Mo. App.), 271 S. W. 540, and in Peppers v. St. Louis-San Francisco Railroad Co., 316 Mo. 1104, 295 S. W. 757. It was criticized in both those cases, as were similar instructions in Hite v. Railway, 225 S. W. (Mo.) 916, and in Trautmann v. Trautmann, 300 Mo. 314, 254 S. W. 286. Since the cause is reversed and remanded on other grounds it is sufficient as to the second paragraph of the instruction to refer to what was said in the cases just mentioned.

Of the first paragraph appellant offers two criticisms, viz., that it gives the jury no guide as. to what facts must be found to entitle plaintiff to a verdict, and that it is erroneous in not telling the jury that the burden rested on defendant to prove by the preponderance of evidence that Bryant was an independent contractor. We think it is not subject to the first criticism because it refers the jury to "these instructions" for the facts to be found, and the facts are hypothesized in other instructions. Nor do we agree with appellant regarding his second objection.

Neither party has referred us to any authorities on the latter point. We find a reference to the subject in Knoche v. Pratt, 194 Mo. App. 300, l. c. 304-5, 187 S. W. 578, that might seem to support plaintiff's contention. But the court is there discussing the case from the standpoint of a demurrer to the evidence and apparently had in mind what is sometimes referred to as the burden of evidence in certain circumstances rather than the burden of proof to be defined in instructions to the jury. In this case defendant is a corporation, which can act only through agents. Plaintiff asserts in effect, and to prevail must maintain, that the person through whose negligence he was

injured was defendant's agent. The burden of proving the constituent elements of his case rests upon plaintiff. Defendant's denial puts in issue the allegations of the petition upon which the right of recovery is predicated. On principle it seems to us that proof that the person charged to be defendant's agent was an independent contractor and therefore not defendant's agent is not in the nature of affirmative defense or confession and avoidance, but is negation of an essential element of plaintiff's case, and that the burden of proof remains with plaintiff notwithstanding this defense is offered. In DeSandro v. Missoula Light & Water Co., 48 Mont. 226, 238, 136 Pac. 711, it is said:

"The defense that the person responsible for the work is an independent contractor is not affirmative in its nature. At common law it was available under a plea of not guilty. [Citing cases.] Under the Code it is equally available under a general denial, because evidence tending to show that a person other than the defendant is the responsible principal—the master—not only tends to negative the fact of employment by the defendant, but also that the negligence causing the injury was his. So far as we know, no court has announced the rule that the defense must be established by a preponderance of the evidence. If the plaintiff's case as made at the close of his evidence calls for the opinion of the jury, the defendant must thereupon proceed with his evidence in rebuttal, but he is never required to assume any greater burden; and if at the close of the whole case it appears that the work was being done by an independent contractor, or the evidence on this point stands at an equipoise, he is entitled to a verdict. Just here it may be remarked that the trial court adopted the view that the burden was upon the company to establish this defense by a preponderance of the evidence. This was clearly error."

That this defense is available under a general denial, see also Overhouser v. Am. Cereal Co., 128 Iowa, 580, 115 N. W. 113; Roemer v. Striker, 142 N. Y. 134, 36 N. E. 808; Gulf, C. & S. F. Ry. Co. v. Beasley, 67 Okla. 27, 168 Pac. 200.

VIII. Appellant complains of error in the refusal of instructions by which he sought to have the case submitted on the theory that even though Bryant employed plaintiff, if defendant retained and exercised control over the work and the men doing the work as to manner and method of doing same, defendant would still owe plaintiff the duty to use ordinary care for his safety. Respondent's only suggestion in its brief as to why these instructions should have been refused is that they were not within the scope of the pleadings. Since defendant offered evidence un-

der its general denial, as we hold it was entitled to do, tending to show that Bryant was an independent contractor and the case was tried on both sides on the theory that that issue was in the case, we see no reason why it should not have been submitted to the jury. The form of the instructions in question is not criticized and we deem it unnecessary to discuss them further.

The judgment is reversed and the cause remanded. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.