**MATANUSKA ELECTRIC ASSOCIATION, INC., Appellant,**

v.

**Walter JOHNSON, Appellee.**

**No. 278.**

Supreme Court of Alaska.

Nov. 19, 1963.

John C. Hughes, Hughes, Thorsness & Lowe, Anchorage, for appellant.

W. C. Arnold, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

NESBETT, Chief Justice.

The question before us is whether the employer of an independent contractor may be held liable to the contractor's injured employee for negligence in failing to select a competent contractor where the contractor has failed to provide workmen's compensation insurance as required by law and is

financially unable to respond in damages for injuries sustained by its workmen.

Appellant Matanuska Electric Association, hereinafter referred to as MEA, awarded a right of way bulldozing clearance contract in the sum of $837.90 to John Joslin who was low bidder. Joslin commenced performance of the contract without an employee, but after losing a track on the dozer he hired the appellee Johnson to assist in remounting the track and thereafter in marking the right of way and picking up roots. While engaged in this employment Johnson was badly injured by a falling tree which had been dislodged by the dozer.

At the time he contracted with MEA Joslin thought that he was covered by a policy of workmen's compensation insurance, but learned after the accident that he carried only public liability insurance. MEA's contract with Joslin required that he carry workmen's compensation and liability insurance. On small individual clearing contracts the contractor was not required by MEA to show evidence of workmen's compensation coverage. Instead, according to its manager, MEA relied on its own insurance to cover the contractor and his employees.

The suit by appellee against MEA and Joslin was tried before the court without a jury and resulted in a judgment against the defendants jointly and severally in the sum of $12,920, which was approximately the amount of benefits appellee would have received had Joslin actually been covered by workmen's compensation insurance.

The trial court found that Joslin was a civil engineer who had been engaged in heavy construction and road work since 1940; that he had operated bulldozers at various times since 1943; that he had bid on five different small jobs offered by MEA and had been successful bidder on two occasions. It found that under the proven facts Joslin was an independent contractor; that MEA had a duty to exercise reasonable care to select an independent contractor who would be responsible for injuries to his employees and others arising out of the performance of the work and that MEA had breached this duty. The court made no finding that Joslin's education, skill and experience were inadequate for the type contract awarded him. No finding was made that Joslin was personally reckless or irresponsible, although he was found to have been negligent in causing appellee's injuries.

██ The general rule is that the employer of an independent contractor is not responsible for the negligence of the contractor. This rule is said to be based on the fact that the employer of an independent contractor has no control over the prosecution of the work and that it would be unjust to hold him liable for the torts of another whom he cannot direct.[1] It has also been said to be based on the presumption that a contractor will discharge his legal duties owing to employees and third persons.[2]

An exception to the rule is applied where the work to be performed by the contractor is by its nature such that others may be injured unless it is skillfully and carefully done. Where the courts have found the work to be of that nature they have held that the employer has the duty to exercise reasonable care to select a contractor with reasonable skill and competence in the type of work to be performed. The degree of care which must be exercised in selecting an independent contractor has been defined as ordinary care to employ one reasonably competent with ordinary skill in doing the kind of work for which employed,[3] and as that care which a reasonable man would exercise under the circumstances of each in-

1. See, Morris, Torts of Independent Contractors, 29 Ill.L.Rev. 339, 343 (1934).

2. Baker v. Scott County Milling Co., 323 Mo. 1089, 20 S.W.2d 494, 500 (1929);

See Annot. 8 A.L.R.2d 267, 273 (1949); Restatement, Torts sec. 409 (1934).

3. Baker v. Scott County Milling Co., 323 Mo. 1089, 20 S.W.2d 494, 500 (1929).

dividual case.[4] Failure to exercise such care in selection will make the employer liable for the contractor's acts or omissions.[5]

A study of the authorities illustrating this exception does not provide the reader with any definite concept of its application. The particular facts of each case must govern. In Joslin v. Idaho Times Pub. Co.[6] the court took judicial notice of the fact that the delivery of newspapers by the use of motorcycles required skill, experience and judgment and was hazardous enough to require that an employer of such deliverymen exercise care in selecting fit and safe operators. On the other hand, in Moore v. Roberts[7] it was held that the employer of a contractor to haul lumber by motor truck had the right, in the absence of any notice to the contrary, to assume that the contractor was not conducting his business in violation of the law. The contractor had no permit from the Railroad Commission and his driver had no chauffeur's license or permit from the Railroad Commission. Nevertheless, the evidence was held to be insufficient to create the issue that the employer was negligent in the selection of the contractor. In Kendall v. Johnson[8] the

court stated that the work of blasting may or may not fall within the exception to the general rule depending upon the circumstances. Since the contractor was employed to construct a railroad grade in the Cascade Mountains far removed from any human habitation the general rule of nonliability was held to apply. In Berg v. Parsons[9] however, the contractor blasted to excavate city lots. The only investigation of the contractor's competence to do the work consisted of an inquiry of a law clerk in a lawyer's office who advised that he had seen a piece of blasting done by the contractor which was reasonably well performed. The court held that the employer had not performed his duty to employ a competent contractor. In Tansey v. Robinson[10] it was revealed that a grocery delivery contractor had twenty-nine previous traffic convictions, had lost his license and had no permit from the Illinois Commerce Commission to carry property for hire. The only inquiry made by the employer was of the contractor's predecessor who advised that the contractor was reliable and recommended him. The contractor had produced a policy of insurance. The court held

4. Tansey v. Robinson, 24 Ill.App.2d 227, 164 N.E.2d 272, 276–277 (1960); where Illinois adopts the definition provided by the Restatement, Torts sec. 411, comment c.

5. Other exceptions with which we are not concerned in this case are: (1) where the work to be performed is inherently dangerous and likely to cause injury to others unless special precautions are taken; See, Janice v. State, 201 Misc. 915, 107 N.Y.S.2d 674 (Ct.Cl.1951) where the work involved demolishing a concrete block building in a populated area, See Restatement, Torts secs. 413, 427 (1934); (2) where the work is ultrahazardous and near absolute liability is imposed on the employer, See, Restatement, Torts secs. 423, 519, 522 (1934); Community Gas Co. v. Williams, 87 Ga. App. 68, 73 S.E.2d 119, 127 (1952). Research has failed to disclose cases which clearly recognize a distinction between "ultrahazardous" and "inherently dangerous" situations. In fact, these terms are frequently equated. e. g. Community Gas Co. v. Williams, supra 73

S.E.2d at 127; where the court appears to have relied upon sections of the Restatement, Torts involving both "ultrahazardous" and "inherently dangerous" activities. Admittedly the distinction is gray. Compare, Restatement, Torts sec. 427, comment (a) with Restatement, Torts sec. 520, comment (a). A close reading of these sections reveals that when the term "ultrahazardous" is used, the test to determine whether negligence is in question, is whether "utility" outweighs the "gravity of the risk". Under the definition of "inherently dangerous" more emphasis appears to be placed on the violent nature of the work, such as dynamiting.

6. 60 Idaho 235, 91 P.2d 386, 388 (1939).

7. 93 S.W.2d 236, 239 (Tex.Civ.App.1936).

8. 51 Wash. 477, 99 P. 310, 315 (1909).

9. 84 Hun 60, 31 N.Y.S. 1091 (Sup.Ct. 1895).

10. 24 Ill.App.2d 227, 164 N.E.2d 272 (1960).

that an issue as to whether the employer had used reasonable care in the selection was raised and summary judgment should not have been granted.

The competency of a contractor is generally determined by the skill and experience that he has to do the particular work. In Joslin v. Idaho Times Pub. Co.[11] the court stressed the skill, experience and judgment required to safely operate motor vehicles. In Tansey v. Robinson [12] the past record of traffic convictions of a contract grocery deliveryman and his loss of his driver's license and failure to have a state permit were considered to be factors reflecting on his competency.

■ The question of whether the contractor employed was in fact competent seems to arise only after suit on a claim of negligence. The question before the court then becomes two-pronged. The first question is whether the contractor was in fact negligent in the respect claimed. If so, then the second question may be whether the employer, after reasonable inquiry, knew or should have known that the contractor was unsuited for the work before employing him. A single act of negligence on the part of the contractor does not necessarily establish incompetence.[13] On the other hand, if the negligence resulted from a lack of skill or experience in performing the particular type of work, inadequacy of equipment, or from recklessness or other personal characteristics of the contractor, then the question may be whether the employer, after making such investigation of the contractor's competency as a reasonable person would have made under the same circumstances, learned or should have learned of the contractor's lack of skill, inadequate equipment, or of existing personal characteristics such as recklessness or lack of judgment.

In the case before us Joslin was awarded a contract to clear a power line right of way forty feet wide and six miles long. The work required the use of a tractor bulldozer and as near as we can determine from the record was to be performed away from populated areas. The small amount of the contract price would indicate that few, if any employees were to be used. One official of MEA testified that the qualifications for obtaining the contract were that the bidder own a bulldozer and operate it himself. Joslin was asked by MEA to produce evidence of public liability insurance but not of workmen's compensation. Joslin testified that it was not his intention to employ anyone to assist him and that he did not employ Johnson until the second or third day of work when it became necessary to have assistance in remounting a track of the tractor.

■ The clearance of forested land by bulldozing, even though to be performed away from populated areas is work which could result in injury to others unless skillfully and carefully done. The moving of heavy equipment to and from the site, the felling and shoving of trees and other objects require skill and experience and unless done with care can result in injury to others. We believe that Joslin's background of education and experience, plus his record of having twice previously performed contracts for MEA, negatives any claim that he was not technically competent to perform the work he contracted to do. As we have mentioned, the trial court made no finding concerning Joslin's technical competency. Its finding of a breach of duty by MEA appears to have been based entirely on the fact that Joslin was not financially able to respond in damages for injuries to his employees and that he did not carry insurance for that purpose. In view of the authorities cited by the trial court we conclude that it held in effect that financial responsibility is an indispensable attribute of a competent contractor.

11. 60 Idaho 235, 91 P.2d 386, 388 (1939).

12. 24 Ill.App.2d 227, 164 N.E.2d 272, 276 (1960).

13. Moore v. Roberts, 93 S.W.2d 236, 239 (Tex.Civ.App.1936).

We find ourselves unable to agree with the learned trial judge. Almost all of the authorities examined by us concerning the duty of the employer to select a competent contractor arose out of circumstances where a third person, rather than an employee of the contractor, was injured.[14] In the case before us it was the employee of the independent contractor who was injured by the contractor's negligence.

There is a difference between the situation where an innocent passer-by or an adjoining property owner is injured or damaged by the independent contractor's negligence and the case of injury to the contractor's employee. Legislatures long ago acted to provide compensation for injured employees by enacting workmen's compensation acts which covered the employee regardless of negligence. The first such act was passed in Alaska in 1915.[15] The act presently in force provides that any employer of one or more persons shall be liable for the payment of compensation to injured workmen as provided in the act and that negligence shall not be a defense to a proceeding to enforce payment.[16] The act further provides that failure on the part of the employer to carry workmen's compensation insurance or provide self insurance as provided for in the act shall carry civil as well as criminal penalties.[17]

The basic question that must be decided in the case before us is whether the employer of an independent contractor has a legal right to assume that his contractor will abide by the law and provide for compensation where an employee is used or whether he must himself take affirmative steps to determine that the contractor is financially responsible and has complied with the workmen's compensation act.

Appellee contends that MEA was negligent in not requiring that Joslin produce for inspection an effective workmen's compensation insurance policy before awarding him the contract. It appears that MEA had insurance coverage that will pay Johnson's judgment should this court hold that MEA selected a contractor who was incompetent because financially irresponsible.

Johnson's injuries were serious, his medical expenses high and we are not unaware of his family responsibilities. His judgment against Joslin apparently is uncollectible and his only hope of obtaining compensation for the injuries suffered lies in sustaining his judgment against MEA.

In spite of these human circumstances we do not feel justified in extending the scope of the rule.[18] The liability that such a rule would impose on all employers of independent contractors would be likely to create more hardships than it would alleviate. A new law or rule would not necessarily eliminate hardship cases. We must bear in mind that Joslin was required by law to provide for the compensation of injured employees but negligently failed to

---

14. Baker v. Scott County Milling Co., 323 Mo. 1089, 20 S.W.2d 494, 500 (1929) which is relied upon by appellee may be an exception. The force of this case as a persuasive authority as to financial responsibility is diminished by the number and variety of issues submitted to the jury. Also because its facts arose prior to the adoption of a workmen's compensation act by Missouri in 1927, see Laws of Mo.1927, pp. 490–522.

15. SLA 1915 ch. 71, applicable only to the mining industry, but expanded into a general act in 1923. SLA 1923, ch. 98.

16. AS 23.30.045; AS 23.30.050; AS 23.30.-055; AS 23.30.265.

17. AS 23.30.085; AS 23.30.070(f); AS 23.30.255(a).

18. The concept that an independent contractor is not competent unless financially able to respond in damages to tort claims was discussed but not applied in Majestic Realty Associates Inc. v. Toti Contracting Co., 30 N.J. 425, 153 A.2d 321, 324 (1959). See, Morris, Torts of Independent Contractors, 29 Ill.L.Rev. 339 (1934); Steffen, Independent Contractor and the Good Life, 2 U.Chi.L. Rev. 501 (1935); 2 Harper and James, Torts, sec. 26.11, p. 1405 (1956); Prosser, Laws of Torts, sec. 64, pp. 357–358 (2d ed. 1955).

comply even though failure subjected him to civil and criminal penalties.[19]

If the rule were extended to include financial responsibility no contractor could be employed with safety without insurance or a contractor's surety bond to cover the employer's potential liability in the event the contractor failed to abide by the law and provide for employee compensation, or if, after procuring insurance, the contractor permitted it to lapse, be cancelled, or lost coverage for any other reason.

True, the present rule only requires that the employer exercise reasonable care to select a competent contractor. But whether reasonable care was exercised depends upon the facts of each particular case. The facts surrounding the contractor's employment and competency are always judged in hindsight after a serious injury, where the usual sources of compensation are not available and personal hardship must result. There is little enough certainty in the rule as it presently reads. If financial responsibility were added as a factor, the taking out of insurance would be the only safe course for a prudent informed employer to pursue. Employers of independent contractors are scattered throughout our social and economic spectrum. Probably the majority are salaried workmen and wage earners of modest means who are inexperienced and uninformed in matters of vicarious liability. Increasingly the type of work required of contractors is of such a nature as to require skill and experience in its performance to avoid injury to others.[20]

No end of justice would appear to be served by a rule which in its largest application, would have the effect of transferring the hardship of injured workmen to persons of modest means and business experience who were only remotely connected with the fault or negligence that caused the injury and who had no control over the performance of the work by the independent contractor. Under those circumstances the crushing impact of a personal injury judgment would appear to be merely compounding a hardship that should have been avoided by compliance with the workmen's compensation act.

Some such rule may eventually be considered a social necessity in order to assure that all injured persons are adequately compensated. If so, it should be established by the legislature after careful study of the social and economic impact it might have. The question of whether the employer's liability should be made to depend upon whether or not the contractor was negligent should perhaps be considered at the same time. At present the contractor is liable for the payment of compensation to his employee regardless of whether he or the employee was negligent. If the ultimate object is to guarantee compensation and minimize human hardship then it may seem advisable for the legislature to permit recovery from the employer regardless of negligence.

The concept that all employers should be able to judge the skill, experience, knowledge, adequacy of equipment, and, as now suggested by appellee, the financial responsibility possessed by independent contractors, is based on unreality to a great extent. Where the work to be performed by the contractor is not of a type likely to result in injury to others, no particular care in selection of the contractor is required. As the likelihood of injury to others increases because of the nature of the work, the degree of care which must be exercised in the selection of the contractor increases. Some experienced employers of contractors have the ability to weigh the technical factors of skill, experience and adequacy of the equipment possessed by contractors under consideration. Probably most do not. The

19. AS 23.30.085; AS 23.30.070(f); AS 23.30.255(a).

20. For example, the employment of bulldozer contractors for land clearance by the individual home owner and homesteader in Alaska is so frequent as to be commonplace—likewise the employment of house movers, well diggers and airplane bush pilots.

average employer hiring a contractor to construct, repair, move or demolish a residence, for example, will not be qualified to judge of his skill, experience or the adequacy of his equipment. The fact that he usually operates in the area under a license and business name and holds himself out as being able to perform the particular work to be done is all the average employer has as a guide to competency. Ordinarily the employer will not be competent to weigh the conflicting opinions on competency that might be obtained by consulting experts. Under the rule, however, the potential liability of the employer increases as his ability to determine the competency of the contractor to perform technical and dangerous projects decreases.

This disparity is emphasized where it is the contractor's employee who seeks to hold the employer liable for employing an incompetent contractor. It would seem that the average contractor's employee would be at least as capable, if not more capable, than the average employer, of determining whether the contractor for whom he works has the necessary skill, experience and adequate equipment to perform the work. For

this court to add financial responsibility as a factor in determining competency would only compound the uncertainty of application of an already vague and uncertain rule and would accomplish no useful purpose.

Before the courts should be asked to extend liability to the employer of the independent contractor for injuries to the contractor's employees, where none is imposed by statute, it would seem advisable for the responsible state agencies to make a serious attempt to enforce the legal sanctions presently provided against the contractor who fails to abide by the law and provide compensation for injured employees.

In view of the foregoing we hold that MEA had a right to assume that Joslin would abide by the law and the terms of his contract and provide compensation for his employee in the event he decided to use one. MEA did not have the affirmative duty of requiring that Joslin produce for inspection an effective policy of workmen's compensation insurance which would be applicable in the event he employed others. Joslin was not an incompetent contractor.

The judgment below is reversed insofar as it pertains to the appellant MEA.